OPINION OF THE COURT
 

 GARTH, Circuit Judge.
 

 Philadelphia Asbestos Co. (trading as “Pacor, Inc.”) appeals from a district court order which remanded a products liability action, brought against Pacor by John Higgins and his wife, to Pennsylvania state court. This case, as well as
 
 Hanna v. Philadelphia Asbestos Co.,
 
 743 F.2d 996 (3rd Cir.1984) also decided this day, requires a determination of the limits to federal bankruptcy jurisdiction in proceedings “related to” bankruptcy under 28 U.S.C. § 1471(b).
 

 While on its face, this appeal appears superficially simple, it nevertheless presents us with a complex of jurisdictional hurdles which must be surmounted before we may confront the merits of the controversy. The jurisdictional questions to be considered are: (1) Does an order of the district court in a bankruptcy context, which order remanded an earlier state court proceeding to the state court, satisfy the final order criteria of
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)? (2) Did Congress intend that appeal from such a remand order be controlled by the removal provisions of statutes pertaining to the district court, 28 U.S.C. §§ 1441-1447 (1982), or be controlled by 28 U.S.C. § 1478 (1982), the bankruptcy remand statute? (3) If governed by section 1478(b), is review authorized where the proceeding is
 
 not
 
 “related to” bankruptcy, and thus is an action in which no jurisdiction can attach? Only after answering those questions and finding that appellate jurisdiction inheres, and that appeal is not proscribed,
 
 [1]
 
 do we reach the merits of this action.
 

 Because we decide that we have appellate jurisdiction, and because we agree with
 
 *986
 
 the district court that the action between Higgins and Pacor was not a proceeding “related to” bankruptcy, we will affirm the judgment below which remanded the Higgins-Pacor action to state court.
 

 I.
 

 John and Louise Higgins initially brought suit against Pacor in the Pennsylvania Court of Common Pleas. They sought damages allegedly caused by Mr. Higgins’ work-related exposure to asbestos supplied by Pacor, a distributor of chemical supplies. In response, Pacor filed a third party complaint impleading the Johns-Man-ville Corporation, which Pacor claims was the original manufacturer of the asbestos.
 

 On August 26,1982, Johns-Manville filed a chapter 11 petition in bankruptcy in the United States Bankruptcy Court for the Southern District of New York.
 
 In re Johns-Manville Corp.,
 
 Nos. 82 B 11656 to 82 B 11676 (Bankr.S.D.N.Y. filed Aug. 26, 1982). In September, 1982, however, the Court of Common Pleas severed the third party action (Pacor against Johns-Manville) from the Higgins action against Pacor. On February 16, 1983, as the Court of Common Pleas was preparing to bring to trial the Higgins-Pacor claim, Pacor filed a Petition for Removal in the Bankruptcy Court for the Eastern District of Pennsylvania, seeking to remove the entire Higgins-Pa-cor-Manville controversy to federal bankruptcy court. Simultaneously, Pacor moved the Eastern District bankruptcy court to transfer the matter(s) to the Southern District of New York, where it would be joined with the rest of the Johns-Manville bankruptcy administration.
 

 The bankruptcy court in the Eastern District of Pennsylvania, upon considering Pa-cor’s removal application, was of the opinion that the entire Higgins-Pacor-Manville matter should be remanded back to the Court of Common Pleas. It reasoned that Pacor’s removal petition was filed beyond the thirty day time limit prescribed by Interim Bankruptcy Rule 7004(a),
 
 [2]
 
 and therefore was fatally defective. Although that time limit had been extended by Bankruptcy Judge Lifland, who is handling the Man-ville bankruptcy administration in the Southern District of New York, the bankruptcy court below held that the time limit was mandatory and could not be extended.
 

 Upon “appeal”
 
 [3]
 
 to the district court, Pa-cor argued that the bankruptcy judge administering the Manville chapter 11 proceedings was empowered to grant a motion to enlarge the time for filing removal petitions in matters related to the Manville case. It further contended that the entire Higgins-Pacor-Manville dispute, including the original action between Higgins and Pacor, was “related to” bankruptcy and therefore should be joined with all other Manville matters in the Southern District of New York.
 

 The district court agreed with Pacor that the thirty day limit on filing petitions for removal could be extended by an appropriate order of the Manville chapter 11 court, and therefore Pacor was not time-barred from attempting to remove the actions to federal bankruptcy court. The district judge also ruled, however, that the original suit by Higgins against Pacor was not “related to” the Manville bankruptcy proceedings, and therefore there was no jurisdiction in the bankruptcy court to hear the matter under 28 U.S.C. § 1471(b). Thus, it ordered the Higgins-Pacor action remanded to state court.
 

 
 *987
 
 The district court did agree, on the other hand, that the Pacor-Manville third party claim was a proceeding “related to” bankruptcy, and it remanded that portion of the action to the bankruptcy court for consideration of the transfer of venue motion made by Pacor. Pacor now appeals to this court from that portion of the district court’s order which remanded the Higgins-Pacor lawsuit to state court.
 

 II.
 

 Our first concern on this appeal is whether we have appellate jurisdiction to review the district court’s order. Because of the complex statutory provisions involved, and the interrelationship between the roles of the bankruptcy court and the district court, it is necessary to analyze our jurisdiction in a three step mode.
 

 First, we must determine whether the district court’s order entered in a bankruptcy context and which granted remand to the state court satisfies the requirements of “finality” for general purposes of ap-pealability. This determination, in turn, rests upon a “collateral order” analysis.
 
 See Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 

 Second, assuming that we conclude (as we do) that such a remand order is a final collateral order, we next examine whether our appellate jurisdiction has nevertheless been affirmatively precluded by Congress, pursuant to 28 U.S.C. § 1447(d).
 

 Third, holding as we do that our answers to the first two inquiries permit appellate review of the remand order in question here, we must then consider whether our jurisdiction has been proscribed by the provisions of 28 U.S.C. § 1478(b) (1982).
 
 [4]
 
 We hold that it has not.
 

 A.
 

 Under both 28 U.S.C. § 1291 (general final appeals from district court) and 28 U.S.C. § 1293 (bankruptcy appeals), for an order to be reviewable in this court, it must be “final.”
 
 [5]
 
 While, in this case, it is
 
 *988
 
 true that there is no final judgment on the merits over all claims and parties, we believe that the remand order falls within the small class of orders, collateral to the rest of the litigation, which are appealable under the doctrine of
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 5.Ct. 1221, 93 L.Ed. 1528 (1949). For an order to be appealable under the
 
 Cohen
 
 collateral order doctrine, three requirements must be met: (1) it must conclusively determine the disputed question; (2) it must resolve an important question completely separate from the merits of the action; and (3) it must be effectively unre-viewable on appeal from final judgment.
 
 Coopers & Lybrand v. Livesay,
 
 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). We find that these conditions have been satisfied.
 

 It is first apparent that the remand order conclusively determines the disputed question of whether the Higgins-Pacor claim is “related to” bankruptcy for purposes of 28 U.S.C. § 1471(b) (1982).
 
 [6]
 
 Indeed, the very fact that the district court remanded to the state court, indicates that it will not alter its determination that there is no jurisdiction under section 1471(b).
 

 Secondly, the district court’s determination that there was no section 1471(b) jurisdiction is easily separable from the remainder of the litigation. It does not involve consideration of the merits of Higgins’ products liability-personal injury claim against Pacor (or indeed of Pacor’s third party claim against Manville). It merely determined the collateral issue of whether that claim could properly be litigated in federal bankruptcy court. As is discussed
 
 infra,
 
 this jurisdictional question involves no more than a threshold determination of whether any judgment which might result from the Higgins-Pacor action could have a tangible effect on the Manville bankruptcy estate, such that it is “related to” that proceeding. It does not, however, involve any inquiry into how that judgment was reached, or whether that judgment was correct, and therefore does not implicate the merits of the claim itself.
 

 Thirdly, the remand order would be effectively unreviewable if Pacor were forced to wait until a final judgment is entered in order to appeal.
 
 [7]
 
 It is true that a portion of the removed litigation still remains for adjudication in the federal courts, i.e. the original Pacor-Manville third party action. In this case, however, we believe that Pa-cor’s opportunity to appeal might be irretrievably lost should review be withheld pending the outcome of the remaining third party claim. Here, the results of the district court’s remand order would be felt immediately. Upon remand, the state court would continue to adjudicate the Hig
 
 *989
 
 gins-Pacor claim, since even if we were to rule that the district court improperly remanded to the state court, the jurisdiction of the state court to proceed with the Higgins-Pacor claim would not be affected. At the very latest, jurisdiction was revested in the Court of Common Pleas at the time the district court, rightly or wrongly, issued its remand order, if indeed jurisdiction was ever lost by the state court.
 
 [8]
 

 See Chandler v. O’Bryan,
 
 445 F.2d 1045, 1058 (10th Cir.1971),
 
 cert. denied,
 
 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972).
 

 Thus, the state court would be free to proceed and actually litigate the dispute on the merits. Indeed (especially if the Pacor-Manville claim is transferred to the Man-ville bankruptcy administration), the likelihood is great that the state court will actually enter a judgment before the remainder of this litigation is completed in the federal courts. Pacor could therefore be confronted with a judgment which was entered by a court of competent jurisdiction, and which could be afforded res judicata effect. If a valid state court judgment were actually entered against Pacor by the Court of Common Pleas, then the remand order would be a
 
 fait accompli,
 
 and a later appeal challenging its correctness would come too late to be of utility in vindicating any alleged right to have a federal forum.
 

 Our conclusion in this regard is supported, if indeed not required, by the Supreme Court’s decision in
 
 Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
 
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which also employed a
 
 Cohen
 
 collateral order analysis. In
 
 Moses H. Cone,
 
 the Court held that a district court order, which stayed an action pending resolution of a parallel state proceeding, was final for purposes of jurisdiction. The Court noted that:
 

 a stay of the federal suit pending resolution of the state suit mean[s] that there would be no further litigation in the federal forum; the state court’s judgment on the issue would be res judicata. Thus, here, ... [the plaintiff] was “effectively out of court.” Hence, as the Court of Appeals held, this stay order amounts to a dismissal of the suit.
 

 Id.
 
 103 S.Ct. at 934 (quoting
 
 Idlewild Liquor Corp. v. Epstein,
 
 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962));
 
 see also
 
 
 *990
 

 Hovsons v. Secretary of the Interior,
 
 711 F.2d 1208, 1211 (3d Cir.1983);
 
 id.
 
 at 1214-16 (Garth, J. concurring and dissenting)
 
 (Pullman
 
 abstention orders appealable).
 

 We therefore conclude that the district court’s order remanding the Higgins-Pacor action is a final collateral order, and would therefore be appealable under 28 U.S.C. § 1291, absent some other jurisdictional barrier.
 
 See
 
 15 Wright & Miller,
 
 Federal Practice & Procedure
 
 § 3914 at p. 548-49 (1976).
 
 [9]
 

 B.
 

 We next consider whether, given our holding that a remand order before us would normally be immediately appealable under 28 U.S.C. § 1291, Congress has nevertheless affirmatively precluded such review by special statute. Our analysis centers on two particular provisions: 28 U.S.C. § 1447(d), and 28 U.S.C. § 1478(b). We discuss each in turn.
 

 The general provisions of the Judicial Code
 
 [10]
 
 contain the following sections:
 

 § 1441 Actions removable generally
 

 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 

 § 1447 Procedures after removal generally
 

 (c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case.
 

 (d)
 
 An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise,
 
 except that an order remanding a case to the State court from which it was removed pursuant to section 1443 [civil rights cases] of this title shall be reviewable by appeal or otherwise.
 

 
 *991
 
 (Emphasis added). Higgins contends that section 1447(d) divests this court of jurisdiction to review the remand order.
 
 See Thermtron Products, Inc. v. Hermansdorfer,
 
 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976) (§ 1447(d) normally prohibits review of remands pursuant to § 1447(c), whether by appeal or otherwise),
 
 but see also supra
 
 note 9. Pacor contends, on the other hand, that the general removal provisions of 28 U.S.C. §§ 1441-1447, including the prohibition of section 1447(d), do not apply to bankruptcy removals authorized by 28 U.S.C. § 1478. We must agree.
 

 Since the relevant portions of sections 1441-1447 were all enacted together within the 1948 Judicial Code, a cardinal rule of construction requires that we read them as a whole.
 
 See, e.g., NLRB v. Lion Oil Co.,
 
 352 U.S. 282, 288, 77 S.Ct. 330, 333, 1 L.Ed.2d 331 (1957) (in expounding a statute, court must not be guided by single sentence, but rather should look to whole law). We first examine the statutory framework.
 

 Section 1441 authorizes removals from state court to the district court of all actions over which the district court has original jurisdiction. Section 1446(c) then dictates that any case over which the district court determines that it does not have jurisdiction shall be remanded to the state court. Thus, the proscription of section 1447(d) against review of remand orders is applicable to proceedings conducted pursuant to these provisions, i.e. cases which were removed from state court pursuant to section 1441 and which were then remanded pursuant to section 1447(c).
 

 In this case, however, removal was not made from state court to the district court under the general provision of section 1441. Rather, removal was effected to the bankruptcy court pursuant to 28 U.S.C. § 1478(a), enacted as part of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 241(a), 92 Stat. 2670 (1978), which provides:
 

 § 1478 Removal to the bankruptcy courts
 

 (a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit’s police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.
 

 Section 1478(a) thus authorizes a very different type of removal than does section 1441. Under its provisions, a proceeding from
 
 any
 
 other court (including another federal court) may be removed to the
 
 bankruptcy
 
 court, provided the bankruptcy court has jurisdiction of the action under 28 U.S.C. § 1471. We find .that, at the time the Bankruptcy Reform Act was passed, section 1478 removals simply could not be included within the general framework of sections 1441-1447.
 
 [11]
 
 By its own terms, section 1478 deals with removals to the bankruptcy court, which — at least at the time the 1978 Act was enacted — was an entirely separate entity from the district court.
 
 [12]
 
 On the other hand, it allows re-
 
 *992
 
 mováis not only from a state court, but from other federal courts as well, thus permitting removals which sections 1441-1447 do not. A double incongruity with sections 1441-1447 would therefore arise if we were to construe the two sets of statutes as embracing the exact same circumstances.
 

 The fact that any attempt to apply the general removal provisions to removals brought under section 1478 would create a number of statutory conflicts and inconsistencies, supports the conclusion that the provisions of sections 1441-1447 were never meant to be read into the procedures for bankruptcy removals. Since, by their own terms, sections 1441-1447 can only apply to removal from
 
 state
 
 courts, while bankruptcy removals may come both from state and
 
 federal
 
 courts, an inexplicable hiatus would develop if the two statutes were engrafted onto each other, whereby some removed bankruptcy cases would be covered by the procedures of sections 1441-1447, while others would not. Similarly, section 1441 allows only a defendant to seek removal, whereas section 1478 allows
 
 any party
 
 to remove. Sections 1441-1447, again by their own terms, could not apply to matters removed by a plaintiff, creating another statutory limbo. We decline to read such incongruous results into the legislation.
 
 See generally, Commissioner v. Bilder,
 
 289 F.2d 291, 298 (3d Cir.1961) (court should avoid incongruous interpretations of statute).
 

 . It is a “well-established principle that a court will not construe a statute to restrict access to judicial review unless Congress manifests its intent to do so by ‘clear and convincing evidence.’ ”
 
 South Windsor Convalescent Home, Inc. v. Mathews,
 
 541 F.2d 910, 914 (2d Cir.1976) (quoting
 
 Johnson v. Robison,
 
 415 U.S. 361, 373-74, 94 S.Ct. 1160, 1168-69, 39 L.Ed.2d 389 (1974)). Because we do not believe Congress could have intended to apply the general provisions of 28 U.S.C. §§ 1441-1447 to bankruptcy removals under section 1478, given the needless conflict and inconsistencies such an interpretation would raise, we conclude that the prohibition on review contained in section 1447(d) is inapplicable in this case.
 

 C.
 

 We next consider whether review of the district court’s remand order is specifically precluded by 28 U.S.C. § 1478(b) (1982) (reenacted as amended in 28 U.S.C. § 1452). In its entirety, section 1478 provides:
 

 § 1478 Removal to the bankruptcy courts
 

 (a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit’s police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such a claim or cause of action.
 

 (b)
 
 The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this
 
 
 *993
 

 subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.
 

 (Emphasis added). Subsection (b) of section 1478 thus provides that, unlike regular removals to the district court, if a case has been properly removed pursuant to subsection (a), the bankruptcy court may nevertheless remand the matter based on equitable considerations.
 
 Cf. Thermtron,
 
 423 U.S. 336, 96 S.Ct. 584 (in removals under §§ 1441-1447, district court may
 
 not
 
 remand on grounds other than lack of jurisdiction). Congress apparently realized that, in some instances, a case over which the bankruptcy court has jurisdiction may nevertheless be more expeditiously litigated in another forum.
 
 See
 
 H.Rep. No. 95-595, 95th Cong., 2d Sess., at 51,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6012.
 
 See also
 
 Levin,
 
 Bankruptcy Appeals,
 
 58 N.C.L.Rev. 967, 993 (1980). To reinforce the bankruptcy court’s discretion as to which of two permissible forums will more efficiently adjudicate the removed matter, the statute also provides that an “order under this subsection” (i.e. subsection (b)) which grants,
 
 or
 
 which refuses to grant remand on any equitable ground is not reviewable by appeal or otherwise.
 

 The dispute in this case, however, does not involve a decision by the bankruptcy court,
 
 [13]
 
 in the exercise of its discretion, to remand the Higgins-Pacor actions on an equitable ground. Rather, the district court found that removal was flatly impermissible ab initio as a matter of law and it upheld Higgins’ contention that subsection (a) of section 1478 did not permit removal of this action in the first place due to lack of jurisdiction. If this interpretation is correct, then discretion and “equitable grounds” are simply not involved, since removal would be statutorily prohibited.
 

 Equitable action by the bankruptcy court based on subsection (b) must first presume that removal was legally proper under subsection (a). If subsection (a) does not permit the removal, then subsection (b) never comes into play, and the absolute prohibition on appellate review over equitable remands which were granted or denied
 
 under this subsection
 
 [section 1478(b) ] never becomes operative.
 
 [14]
 

 We therefore conclude that section 1478(b) precludes appellate review only of orders remanding eases on equitable grounds, and does not forbid our examination of whether there is a statutory and constitutional basis for assuming jurisdiction over a particular matter in a federal court.
 
 See
 
 Kennedy,
 
 The Bankruptcy Court Under the New Bankruptcy Law: Its Structure, Jurisdiction, Venue, and Procedure,
 
 11 St. Mary’s L.J. 251, 288-89 (1979). Coupled with our previous holdings, therefore, we conclude that appellate jurisdiction properly lies to review the order remanding the Higgins-Pacor action to state court.
 

 
 *994
 
 III.
 

 We turn now to the merits of this case, i.e. whether the Higgins-Pacor action is “related to” the Manville bankruptcy action, such that jurisdiction exists to entertain the matter in federal courts.
 

 We must focus once more on 28 U.S.C. § 1471 (1982), which provides in part:
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all the jurisdiction conferred by this section on the district courts.
 

 In enacting section 1471(b), Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.
 
 See
 
 H.Rep. No. 598, 95th Cong., 2d Sess., 43-48,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6004-08.
 
 See also Young v. Sultan, Ltd. (In re Lucasa International, Ltd.),
 
 6 B.R. 717, 719 (Bankr.S.D.N.Y.1980) (§ 1471(b) jurisdiction is “pervasive”);
 
 Westinghouse Credit Corp. v. Yeary (In re Brothers Coal Co.),
 
 6 B.R. 567, 570-71 (Bankr.W.D.Va.1980) (§ 1471(b) jurisdiction is “broad.”). The jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit, however, and there is a statutory, and eventually constitutional, limitation to the power of a bankruptcy court. For subject matter jurisdiction to exist, therefore, there must be some nexus between the “related” civil proceeding and the title 11 case.
 
 See In re Hall,
 
 30 B.R. 799, 802 (M.D.Tenn.1983); 1
 
 Collier on Bankruptcy
 
 113.01, at 3-48 to 3-49 (15th ed. 1982). We find that nexus to be absent here.
 

 As a threshold matter, it should be noted that the Higgins-Pacor suit is one between two parties, neither of which has filed in bankruptcy, in contrast to the Pacor-Man-ville third party claim, where the defendant Manville is engaged in bankruptcy proceedings and which is therefore clearly “related to” bankruptcy. It must therefore be determined whether the primary action between Higgins and Pacor, although not one directly involving the debtor Manville, is still sufficiently connected with the Man-ville bankruptcy estate, such that jurisdiction lies under 28 U.S.C. § 1471(b).
 

 The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether
 
 the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. E.g., In re Hall,
 
 30 B.R. at 802;
 
 In re General Oil Distributors, Inc.,
 
 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982);
 
 In re U.S. Air Duct Corp.,
 
 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981); 1
 
 Collier on Bankruptcy
 
 113.01 at 3-49. Thus, the proceeding need not necessarily be against the debtor or against the debtor’s property. An action is related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
 

 On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction.
 
 See generally Aldinger v. Howard,
 
 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). “[Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.”
 
 In re Haug,
 
 19 B.R. 223, 224-25 (Bankr.D.Ore.1982);
 
 See also In re McConaghy,
 
 15 B.R. 480, 481 (Bankr.E.D.Va.1981) (Bankruptcy court lacks jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest).
 

 
 *995
 
 Our examination of the Higgins-Pa-eor-Manville controversy leads us to conclude that the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not “related to” bankruptcy within the meaning of section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Man-ville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel.
 
 See Borough of West View v. North Hills School District,
 
 274 Pa.Super. 519, 418 A.2d 527 (1980);
 
 see generally Schubach v. Silver,
 
 461 Pa. 366, 375, 336 A.2d 328, 332 (1978) (res judicata);
 
 Vanderveer v. Erie Malleable Iron Co.,
 
 238 F.2d 510 (3d Cir.1956) (collateral estoppel). Even if the Higgins-Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried.
 

 Pacor stresses that the Higgins-Pacor claim would affect the Manville bankruptcy estate, in that
 
 without
 
 a judgment for plaintiff Higgins in that action, there could never be a third party indemnification claim against Manville. This argument does not alter our conclusion. At best, one could say that a judgment against the plaintiff on the primary claim would make absolutely certain that the Manville estate could never be adversely affected. This does not prove the converse, however, that a judgment in favor of the plaintiff Higgins necessarily does affect the estate. The fact remains that any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Man-ville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.
 

 We believe the circumstances here are readily distinguishable from those cases cited by Pacor. In
 
 In re Brentano’s,
 
 27 B.R. 90 (Bankr.S.D.N.Y.1983), MacMillan, (a nondebtor) agreed to act as guarantor of Brentano’s (the debtor’s) obligations under a lease. In turn, Brentano’s contractually agreed to indemnify MacMillan for any liability or judgments incurred as a result of this guarantee agreement. When Brenta-no’s defaulted on the lease, the landlord sued MacMillan to enforce the guarantee. MacMillan successfully removed the action to bankruptcy court as a proceeding “related to” bankruptcy.
 

 In
 
 Brentano’s,
 
 however, it is clear that the action between the landlord and Mac-Millan could and would affect the estate in bankruptcy. By virtue of the indemnification agreement between Brentano’s and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano’s.
 
 See also In re Johnie T. Patton, Inc.,
 
 12 B.R. 470 (Bankr.D.Nev.1981);
 
 In re Lucasa International, Ltd.,
 
 6 B.R. 717 (Bankr.S.D.N.Y.1980);
 
 In re Brothers Coal Co.,
 
 6 B.R. 567 (Bankr.W.D.Va.1980) (all involving guarantors of debt- or’s obligations). Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor’s obligations will necessarily affect that that creditor’s status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation.
 

 In this case, however, there would be no automatic creation of liability against Man-ville on account of a judgment against Pa-cor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate. All issues regarding Manville’s possible liability would be resolved in the subsequent third party impleader action. Furthermore, Higgins is not a creditor of Manville and has filed no claim against Manville. Any judgment obtained would thus have no effect on the arrangement,
 
 *996
 
 standing, or priorities of Manville’s creditors. There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.
 

 We recognize that this situation could work a hardship upon distributors such as Pacor, since in practical terms, it may make it more difficult for them to recover from the ultimate manufacturer of a defective product. Middlemen always face the possibility, however, that attempts to recoup such losses from their manufacturers or suppliers will be hindered, or even unsuccessful, and there is never a guarantee that the original manufacturers will not be judgment proof or found not susceptible to process. Bankruptcy jurisdiction, however, was not conferred for the convenience of those not in bankruptcy to enlarge the possibility of recovery over and above that which they otherwise may have had.
 

 We therefore conclude that the action brought by Higgins against Pacor is not “related to” bankruptcy, and that therefore there was no jurisdiction to remove the matter to federal court.
 
 [15]
 
 There being no federal jurisdiction, the district court had no alternative but to remand the Higgins-Pacor action to the state court.
 
 [16]
 

 IV.
 

 The judgment of the district court, remanding the Higgins-Pacor action to state court, will be affirmed.
 
 [17]
 

 [1]
 

 .
 
 Cf. Firestone Tire & Rubber Co. v. Risjord
 
 449 U.S. 368, 379-80, 101 S.Ct. 669, 676-77, 66 L.Ed.2d 571 (1981) (if court of appeals has no jurisdiction, it cannot reach merits but must dismiss the appeal).
 

 [2]
 

 . The Interim Bankruptcy Rules were presented to the district courts in 1979 by the Supreme Court’s Advisory Committee on Bankruptcy Rules, as suggested additions to each court’s local rules, and were in fact adopted by most district courts. They were intended to serve until the Committee could draft the comprehensive Rules of Bankruptcy Procedure for approval by the Supreme Court and by Congress. On August 1, 1983, the Rules of Bankruptcy Procedure became effective for all districts pursuant to 28 U.S.C. § 2075, and the Interim Rules became obsolete.
 

 [3]
 

 . Whether this was a true "appeal,” or a "review” of the bankruptcy judge’s recommendation, is discussed in
 
 Hanna v. Philadelphia Asbestos Co.,
 
 743 F.2d 996 (3d Cir.1984).
 

 [4]
 

 . We recognize that, effective July 10, 1984, Congress enacted into law the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353 (1984). While the instant controversy arose prior to that date and thus is not governed by the provisions of the new Act, we call attention to it because certain of its provisions recast, in slightly different form, those statutes which we discuss
 
 infra.
 
 Thus, as amended, 28 U.S.C. § 1471 (1982) is contained in the new Act as § 1334; § 1478 has become § 1452; and § 1293 is contained in § 158. We do not believe that the particular changes, terminology, and renumbering of sections make substantive changes in the statutes as we interpret them in this opinion. However, we do not decide this question, as the new Act is not before us.
 

 It appears that the new Act (without consideration of the consequences and reasoning which we set forth in text), in order to accommodate
 
 Northern Pipeline Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), has done no more than to make reference to the "district court" instead of the "bankruptcy court" in relevant sections. It has done so, however, without an intent to disturb the essential differences that existed prior to July 10, 1984, between district court provisions, such as 28 U.S.C. §§ 1441-1447, and bankruptcy provisions such as 28 U.S.C. § 1478 (1982) (renumbered as modified at 28 U.S.C. § 1452). Our belief in this respect is fortified by the legislative history, which reveals, the 1984 Act “re-enact[s], with minor technical amendments, [the] provisions of the 1978 Act relating to venue and removal of bankruptcy cases and proceedings." 130 Cong.Rec. E 1001 (Mar. 14, 1984); 130 Cong.Rec. S 6084 (May 21, 1984).
 

 [5]
 

 . In
 
 Coastal Steel v. Tilghman Wheelabrator, Ltd.,
 
 709 F.2d 190 (3d Cir.),
 
 cert. denied,
 
 — U.S. —, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), we found in a different context that bankruptcy appeals from matters "related to" bankruptcy which were brought after the Supreme Court’s decision in
 
 Northern Pipeline Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), would be treated as general appeals from the
 
 district
 
 court under 28 U.S.C. §§ 1291, 1292, and not as appeals brought under 28 U.S.C. § 1293.
 
 Coastal,
 
 709 F.2d at 199-200. Section 1293 essentially provides for review in the court of appeals of final judgments and orders of the district or bankruptcy court. Because § 1291 and § 1293 both provide for review of "final orders," however, there is no need at this point to differentiate between these two statutes.
 

 We do note, however, that 28 U.S.C. § 1292(a) (appeals from certain district court interlocutory orders) would not provide jurisdiction for our review of the district court action. Even if § 1292 is applicable in this bankruptcy context
 
 *988
 

 (see Coastal,
 
 709 F.2d at 200), orders granting or denying removal are not appealable as orders granting or denying injunctive relief.
 
 See Thaysen v. Lumbermen’s Mut. Casualty Co.,
 
 329 F.2d 149 (3d Cir.1964) (per curiam);
 
 accord, Polyplastics, Inc. v. Transconex, Inc.,
 
 713 F.2d 875, 880 (1st Cir.1983). The only way in which we may review the instant remand order, therefore, is as a "final order.”
 

 [6]
 

 . 28 U.S.C. § 1471 provides in part:
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all the jurisdiction conferred by this section on the district courts.
 

 [7]
 

 . Indeed, as far as the Higgins-Pacor claim itself is concerned, we question what more would be needed in order to comprise a "final judgment" beyond the remand order itself. If the litigation were allowed to proceed, then it would be the Pennsylvania Court of Common Pleas which enters judgment on the merits of the Higgins-Pa-cor action. The federal courts will have no further involvement, and we fail to see how the
 
 district court’s
 
 order would be made any more or less final for purposes of § 1291 by reference to what a
 
 state
 
 court has subsequently done. As far as the federal courts are concerned, the Higgins-Pacor action ended when it was remanded, and to put off an appeal until some later time would be meaningless. In this regard, the remand is similar to any order which dismisses an action for lack of federal question jurisdiction. Such an order of dismissal is of course final and appealable, even though the claims might later be renewed in state court.
 

 [8]
 

 . Normally, in removals from state court to the district court under 28 U.S.C. § 1441, a petition for removal divests the state court of jurisdiction to proceed further, even if the removal is later found to have been improper.
 
 See Arango v. Guzman Travel Advisors Corp.,
 
 621 F.2d 1371, 1374, 1375 n. 4 (5th Cir.1980),
 
 Medrano v. Texas,
 
 580 F.2d 803 (5th Cir.1978);
 
 United States ex rel. Echevarria v. Silberglitt,
 
 441 F.2d 225, 227 (2d Cir.1971);
 
 Chesimard v. Kuhlthau,
 
 370 F.Supp. 473 (D.N.J.1974). This conclusion is derived from the language of 28 U.S.C. § 1446(e), which provides that, upon completion of the procedures required for removal,
 
 "the state court shall proceed no further
 
 unless and until the case is remanded.”
 

 As is discussed
 
 infra
 
 in Part II.B., however, the general removal provisions of the 1948 Judicial Code, 28 U.S.C. §§ 1441-1447, are not applicable to bankruptcy removals under 28 U.S.C. § 1478. Section 1446(e) has no
 
 statutory
 
 corollary in the context of bankruptcy removals. Rather, the Interim Bankruptcy Rules, which were in effect when Pacor’s removal petition was filed, provided only that, upon completion of removal procedures,
 
 "the parties shall proceed no further
 
 in that court [from which removal was taken], unless and until the case is remanded.” Interim Bankr.R. 7004(c);
 
 see abo
 
 R. Bankr.P. 9027(d) (providing the same language in new bankruptcy rules). Thus, the language of § 1446(e), which divested state courts of jurisdiction, was changed in the Interim Rules in its most critical elements, to provide only for a prohibition against the parties, and thus does not evince an intention to affect the raw power of the state courts to act after a bankruptcy removal. This distinction is fortified by the fact that a district court could enjoin a state court from proceeding further in a removed action (28 U.S.C. § 2283), whereas a bankruptcy court could not. 28 U.S.C. § 1481 (bankruptcy court may not enjoin another court).
 

 Moreover, the Interim Bankruptcy Rules, being only the equivalent of local rules of court
 
 (see supra
 
 note 1), could not have limited a federal court’s own jurisdiction
 
 {see
 
 Fed.R.Civ.P. 82, 83), much less the jurisdiction of another sovereignty’s courts, even if it intended to do so. Such a rule would go beyond the statutory mandate Congress gave (or possibly could have given) to the courts
 
 (see
 
 28 U.S.C. 2071, 2072, 2075) in formulating their rules.
 
 See generally Penn Terra Ltd. v. DER,
 
 733 F.2d 267, 272-73 (3d Cir.1984) (congressional intent to preempt state authority must be explicit).
 

 [9]
 

 . In
 
 Thermtron Products, Inc. v. Hermansdorfer,
 
 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court held, as we do here, that unless Congress has affirmatively precluded appellate review by statute, an order remanding to state court is immediately reviewable.
 
 Id.
 
 at 352-53, 96 S.Ct. at 593-94. Relying on cases decided before the
 
 Cohen
 
 collateral order doctrine was developed, however,
 
 Thermtron
 
 noted without further discussion that a remand order was not a "final judgment” reviewable by appeal as of right, and thus the proper remedy was to issue a writ of mandamus to compel the district court to reassume jurisdiction.
 

 Given the absence of any discussion of
 
 Cohen,
 
 and in light of the subsequent decision in
 
 Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (discussed
 
 supra
 
 in text), we do not believe
 
 Thermtron
 
 precludes our foregoing analysis.
 
 See
 
 15 Wright & Miller,
 
 Federal Practice & Procedure
 
 § 3914 at p. 549 (1976). Moreover,
 
 Thermtron
 
 was decided in the context of a general appeal from the district court in a case removed under 28 U.S.C. § 1446-1447. Here, of course, we have an appeal brought in a bankruptcy context, and as this court has noted, considerations of finality are somewhat different in bankruptcy situations.
 
 See, e.g., In re Comer,
 
 716 F.2d 168, 171 (3d Cir.1983). Whatever
 
 Thermtron
 
 may have held with regard to finality, therefore, is not necessarily applicable here.
 

 It is therefore unnecessary for us to treat this appeal as a miscast petition for mandamus.
 
 Cf. Nascone v. Spudnuts, Inc.,
 
 735 F.2d 763 at 773 (3d Cir.1984);
 
 Gold v. Johns-Manville Corp.,
 
 723 F.2d 1068, 1074 (3d Cir.1983) (treating faulty appeal as petition for writ of mandamus). "[A] court of appeals has no occasion to engage in extraordinary review by mandamus in aid of its jurisdiction ... when it can exercise the same review by a contemporaneous ordinary appeal."
 
 Moses H. Cone,
 
 103 S.Ct. at 933 n. 6. At any rate, whether through appeal or mandamus, it is evident that the remand order considered here is reviewable, absent affirmative statutory prohibition.
 

 [10]
 

 . The original Judicial Code was adopted as the comprehensive statutory framework for the federal courts in 1948. Pub.L. No. 80-773, 62 Stat. 869 (1948),
 
 codified as amended in
 
 Title 28, United States Code.
 

 [11]
 

 . This conclusion is buttressed by the fact that, as is discussed
 
 infra
 
 in Part H.C., § 1478(b) contains its own independent provisions on the reviewability of remand orders, which would be partially redundant if § 1447(d) were also held to be applicable, thus leading us to conclude that § 1478(b) contains the exclusive scheme for regulating review of remands in bankruptcy removals.
 
 See also supra
 
 note 4 (referring to the 1984 Bankruptcy Amendments, enacted subsequent to this proceeding).
 

 [12]
 

 . It is true that, in the aftermath of
 
 Northern Pipeline Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the district courts have taken over responsibility for matters "related to” bankruptcy pursuant to local emergency rules, and have, in some ways,
 
 become
 
 "bankruptcy courts.”
 
 See Hanna v. Philadelphia Asbestos Co.,
 
 743 F.2d 996 at 999 (3d Cir.1984). A removal under § 1478, therefore, may now, in a technical sense, lie to the district courts.
 

 It would be straining congressional intent, however, to say that the provisions of the 1948 Judicial Code, §§ 1441-1447, which were clearly inapplicable to bankruptcy removals before
 
 Marathon,
 
 are now applicable because of emergency court rules promulgated in response to
 
 *992
 

 Marathon.
 
 Congress, of course, could not have anticipated the subsequent Supreme Court ruling, and the essence of our holding is that Congress did not intend the terms of § 1447(d) to apply to bankruptcy removals under § 1478. A subsequent court decision, therefore, or mere local court rules, cannot create congressional intent where none existed before.
 

 Section 1478 has been re-enacted as new 28 U.S.C. § 1452, as part of the 1984 Bankruptcy Amendments.
 
 See supra
 
 note 4. The new section, however, changes the references to the "bankruptcy court" into references to the "district court,” and the new provisions of the Act place the district court in charge of all proceedings "related to" bankruptcy. It is clear, however, that Congress intended these alterations to be merely a response to the
 
 Northern Pipeline
 
 decision, and we find no indication that it meant to alter the applicability, or nonapplica-bility, of the procedural provisions of § 1441-1447 to bankruptcy matters. As the captions of the various sections (as designated by Congress itself) themselves reveal, §§ 1441-1447 deal with "Actions Removable Generally” and "Procedures After Removal Generally," while new § 1452 deals with "Removal of Claims Related to Bankruptcy Cases."
 
 Cf.
 
 28 U.S.C. § 1478 (1982) (“Removal to the Bankruptcy Court”).
 

 [13]
 

 . Although § 1478 refers to the “bankruptcy court," the district court, as we have noted, now retains ultimate control of matters “related to” bankruptcy.
 
 See supra
 
 note 12. To the extent that § 1478 refers to remand orders by the "bankruptcy court,” therefore, those orders are now issued by the district court, as was done here.
 
 See Hanna v. Philadelphia Asbestos Co.,
 
 743 F.2d 996.
 

 We do not believe that equating the district court with the bankruptcy court in this context is inconsistent with our earlier holding that the general provisions of 28 U.S.C. §§ 1441-1447 do not apply to bankruptcy removals, even though the district court has taken control of proceedings "related to” bankruptcy. The guideline we follow is that statutes intended to regulate the district courts
 
 as
 
 district courts do not apply to proceedings in bankruptcy, whereas statutes which were intended to control bankruptcy matters do apply, even though it is the district court which is now acting in place of the bankruptcy court.
 

 [14]
 

 . Were we to hold otherwise, such a conclusion would also forbid review of an order
 
 denying
 
 remand, even if the basis for contesting the order was that there was no federal jurisdiction by which to entertain the action. This, in turn, would lead to the anomalous result that, if a bankruptcy court assumed jurisdiction over a case that was utterly unrelated to any proceeding arising under title 11, the courts of appeals and the Supreme Court would be powerless to act. We decline to construe section 1478(b) in such a fashion.
 

 [15]
 

 . Other cases cited by Pacor are also inappo-site.
 
 See Hurt v. Cypress Bank,
 
 9 B.R. 749 (Bankr.N.D.Ga.1981) (action alleging fraudulent inducement which sought to void sale of stock to debtor);
 
 In re Zamost, 7
 
 B.R. 859 (Bankr.S.D.Cal.1980) (action for fraud seeking to rescind loan in which proceeds went to debtors);
 
 In re Bazan,
 
 6 B.R. 937 (Bankr.N.D.Ill.1980) (action by creditor of debtor seeking recovery of property which secured debtor’s obligations);
 
 In re General Oil Distributors, Inc.,
 
 21 B.R. 888 (Bankr.E.D.N.Y.1982) (action by creditor against nondebtor to recover gasoline entrusted to debtor on bailment contract). In each of these cases, it is clear that the action sought to affect property of the estate, or would rearrange the standing of creditors, and thus was "related to" bankruptcy.
 

 [16]
 

 . We note that, under new 28 U.S.C. § 1334, enacted as part of the 1984 Bankruptcy Amendments, the Higgins-Pacor matter could not have been heard in federal court without Higgins’ consent. Rather, the district court under the new Act would be mandated to abstain from any such controversy at request of a party, because of the "mandatory abstention" provision of § 1334(c)(2). The legislative history reveals that Congress was concerned about the
 
 constitutionality
 
 of granting to the federal courts "related to” jurisdiction in cases where no independent basis for federal jurisdiction existed.
 
 See
 
 130 Cong.Rec. S 6088-89 (May 21, 1984) (remarks of Sen. Dole).
 

 [17]
 

 .Neither party has raised the issue passed upon by the bankruptcy court, i.e. whether the time limit for removal can be extended by court order under the Interim Rules. For our purposes, therefore, it is sufficient to note that the time limit of an Interim Rule is clearly not jurisdictional.
 
 See infra
 
 note 5;
 
 see also In re Gurney,
 
 20 B.R. 91, 96 (Bankr.W.D.Mo.1982). For cases supporting the view that the court may extend the time period for removal, see
 
 Stamm v. Rapco Foam, Inc.,
 
 21 B.R. 715, 718 wrankr.W.D.Pa.1982);
 
 In re Circle Litho, Inc.,
 
 12 B.R. 752 (Bankr.D.Conn.1981);
 
 Contra, In re McCollum,
 
 7 B.R. 76 (Bankr.C.D.Cal.1980). Under the new Rules of Bankruptcy Procedure, it is clear that the court may grant such an extension. R.Bankr.P. 9006(b).