BATCHELDER, Circuit Judge.
Appellants Kenneth and June Stewart (“the Stewarts”) appeal the district court’s order dismissing their state law malpractice action against Kevin Henry and his law firm of Sturgill, Turner, Barker & Maloney (collectively “Henry”) and affirming the bankruptcy court’s order granting summary judgment to the defendants. Because we conclude that the federal court lacks jurisdiction over this state law claim, we will reverse the judgments of the bankruptcy court and district court and remand this case with instructions that it be remanded to state court.
Background
In 1991 and 1992, the Bank of Mt. Vernon (“Bank”) instituted three foreclosure proceedings (these actions were eventually consolidated and we will refer to them as *611 “the foreclosure action”) after the Stewarts and their business, Stewart Fertilizer Services, Inc., defaulted on three promissory notes payable to the Bank and secured by mortgages on the Stewarts’ home and business properties. The Stewarts and Stewart Fertilizer brought lender liability counterclaims in the foreclosure action and hired J. Montjoy Trimble, of the TrimbleBowling-Clements law firm (“TrimbleBowling”), to represent them in the foreclosure action. In 1993, the Stewarts and Stewart Fertilizer Services, Inc. filed for Chapter 11 bankruptcy protection, to stop the foreclosure proceedings. According to the bankruptcy court, Ron Bowling of the Trimble-Bowling firm represented the debtors in both Chapter 11 cases.
In 1994, the bankruptcy court converted both Chapter 11 cases into Chapter 7 cases and appointed James Westenhoefer trustee of the estate in each. In 1995, the bankruptcy court appointed Trimble-Bowling special counsel for the bankruptcy trustee to prosecute the lender liability counterclaims, which were now the property of the bankruptcy estates. The Stew-arts received a discharge in their personal Chapter 7 in November 1995. In 1996, Tracey Wise of the law firm of Wise & Warnecke was substituted as counsel for the Stewarts in their personal Chapter 7 proceeding.
In mid-September 1997, due to the illness of J. Montjoy Trimble, the bankruptcy court entered an order appointing Trimble’s nephew, defendant Kevin Henry of the defendant law firm Sturgill, Turner, Barker & Maloney, PLLC, substitute special counsel to pursue the lender liability counterclaim on behalf of the trustee. The Stewarts assert that they also turned to Henry, claiming that they met with him in August 1997 and retained him to represent them in the prosecution of the counterclaim. Although Henry says that he informed the Stewarts that he represented the trustee and reminded them that the counterclaim was the property of the estate, Henry’s office records contain an entry dated August 5, 1997, indicating that he had on that date met with the Stewarts and opened a “new matter” file in their name, and the records of the state court foreclosure action contain an entry of appearance for Henry as counsel for the Stewarts “in place of J. Montjoy Trimble,” dated August 19,1997.
In September of 1997, the parties to the foreclosure action attended a mediation session but failed to settle the case. The Stewarts were represented at the mediation by Tracey Wise. Henry claims that after the mediation attempt he again told the Stewarts that the bankruptcy trustee would have final decision-making authority in the disposition of the lender liability counterclaim but that they could object if a settlement was reached and presented to the Bankruptcy court for approval. After the parties obtained a continuance of the trial date, Henry wrote to the Stewarts, via Tracey Wise, in December of 1997, and informed them that the trustee and the Bank had reached a settlement. Later that month, the Stewarts wrote a letter to inform Henry that they had “decided to dismiss you as our attorney effectively immediately.” The next month, Henry again wrote to the Stewarts and told them he had been representing the bankruptcy trustee since the substitution orders were filed on September 15,1997.
The Stewarts filed this malpractice action against Henry and his law firm in state court in October 1999, arguing that Henry “switched sides” after agreeing to represent the Stewarts in the foreclosure action and lender liability counterclaim. The record indicates that at the time this action was filed, all of the claims against the Stewarts’ personal estate in bankrupt *612 cy had been satisfied and a surplus in the estate remained to be distributed to the Stewarts. The defendants removed the case to the United States Bankruptcy Court for the Eastern District of Kentucky and moved to dismiss for failure to state a claim. The Stewarts filed a motion to remand the case to state court and opposed the motion to dismiss. The bankruptcy court denied the Stewarts’ motion to remand and a subsequent motion to continue the proceeding pending appeal. After holding an evidentiary hearing on the issue of representation, the bankruptcy court granted the defendants’ motion to dismiss and, further, stating that it was treating the motion as one for summary judgment, granted summary judgment in favor of the defendants as well. The district court affirmed the judgments of the bankruptcy court. The Stewarts’ timely appeal followed.
Analysis
The essential question before us is whether the bankruptcy court and the district court erred in concluding that the bankruptcy court had jurisdiction over this state law malpractice claim. We review the bankruptcy court’s decision directly, according no deference to the district court’s findings of fact. We review for clear error the bankruptcy court’s findings of fact; we review de novo its conclusions of law. In re Omegas Group, Inc., 16 F.3d 1443, 1447 (6th Cir.1994).
This state law action was removed to the bankruptcy court under 28 U.S.C. § 1452(a), which provides in pertinent part:
A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
28 U.S.C. § 1452(a). The Stewarts moved to remand the case to state court for lack of subject matter jurisdiction. The bankruptcy court denied the motion, declaring that the jurisdictional scope of Section 1334 was intended to be broad; that the state law action involved property of the estate; and that the claims in the action were “explicitly bankruptcy and intimately intertwined with the bankruptcy estate.” The district court denied the Stewarts’ motion to appeal the bankruptcy court’s decision to remand. The jurisdictional issue is before us here as part of the appeal of the final judgment. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 132 n. 1, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsburg, concurring) (noting that an interlocutory decision “to not remand” under 28 U.S.C. § 1452(b), even if not per se reviewable, “would leave open for eventual appellate consideration ... any question of the court’s subject-matter jurisdiction”).
Section 1334(a) confers on each federal district court “original and exclusive jurisdiction of all cases under title 11,” except as provided in 28 U.S.C. § 1334(b). 28 U.S.C. § 1334(a). Under 28 U.S.C. § 1334(b), each district court has “original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.”
The district court has the authority under 28 U.S.C. § 157(a) to refer to the bankruptcy judges for that district “any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title ll.”[1] *613 The first question before us is whether this state law malpractice action is a case under title 11 or a proceeding arising under title 11, or arising in or related to a case under title 11.

(1) Case under title 11

A case under title 11 is a case containing a claim made under an actual provision of title 11. See 1 Collier on Bankruptcy ¶ 3.01[4][c][i], 3-21 (15th Ed. Revised 1997). In other words, the claim itself must invoke a provision of title 11. “The term ‘cases under title 11’ as used in section 1334(a) is a term of art signifying an action commenced in a federal district court or bankruptcy court with the filing of a petition pursuant to 11 U.S.C. §§ 301, 302 or 303.” Robinson v. Michigan Consolidated Gas Co. Inc., 918 F.2d 579, 583 (6th Cir.1990). The Stewarts’ case is not a petition filed pursuant to 11 U.S.C. §§ 301, 302 or 303, and it is therefore not a “case under title 11.”

(2) Proceedings arising under title 11 or arising in or related to a case under title 11

As we explained in In re Wolverine Radio Co., 930 F.2d 1132 (6th Cir.1991), we need not explicitly distinguish among these three categories of proceedings because they operate together to define the scope of bankruptcy jurisdiction. Id. at 1141. In order to determine whether the matter at issue is within section 1334(b) jurisdiction, we need only determine whether the matter is at least “related to” the bankruptcy. Id.
This court clearly described “related to” jurisdiction in its opinion in In re Dow Corning Corp., 86 F.3d 482 (6th Cir.1996):
The definition of a “related” proceeding under Section 1334(b) was first articulated by the Third Circuit in Pacor[ Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984)]. As stated in that case, the “usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.” Pacor, 743 F.2d at 994. An action is “related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.” Id.
Dow Corning, 86 F.3d at 489. We went on to say:
A key word in [the] test is “conceivable.” Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on “the debtor’s rights, liabilities, options, or freedom of action” or the “handling and administration of the bankrupt estate.”
Id. at 491 (quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir.1991)). There must be some nexus between the allegedly related civil proceeding and the title 11 case-common issues of fact are not enough. Id. at 489. Under this analysis, the question is whether the Stewarts’ malpractice suit impacts their rights, liabilities, options, or freedom of action as debtors, or the handling of their estate. If it does not, then the malpractice case is not “related” to the bankruptcy proceedings.
The Stewarts did not bring this malpractice action against Henry in his official capacity as special counsel to the trustee and the complaint does not claim that Henry mishandled the counterclaim settlement *614 on behalf of the trastee. Rather, the Stewarts claim that before Henry was appointed as special counsel to the trustee, he promised to represent them personally in the matter of the lender liability counterclaim, and that he in fact lied to them, misled them into believing he was representing their personal interests and, by instead representing the adverse interests of the estate, breached both his fiduciary duty and the duty of loyalty owed by an attorney to his client. They claim further that the defendant Sturgill law firm similarly breached its obligations to them.
There is no question that the lender liability counterclaim as to which the Stew-arts claim Henry agreed to represent their personal interests was the property of the estate, and had that counterclaim remained unsettled, this malpractice action conceivably might affect the property of the estate. That counterclaim was settled more than a year before the Stewarts brought this malpractice action, however, and it is undisputed that this action can have no effect on that settlement. The malpractice claim itself does not constitute property of the estate. Under 11 U.S.C. § 541(a)(1), the estate comprises all legal or equitable interests of the debtor in property “as of the commencement of the case.” The Stewarts’ malpractice cause of action did not accrue until after they filed for bankruptcy, and is therefore not an interest in property as of the commencement of the case. Under the Dow Coming analysis, therefore, this action is not related to the bankruptcy because the action cannot conceivably impact any property of the estate, or any right, liability, option or freedom of action of the Stewarts as the debtors in the Chapter 7 proceeding, or the handling and administration of the bankruptcy estate.
Another approach to determining whether an action is “related to” a bankruptcy proceeding is to determine whether the action would benefit the debtor and not the estate; if so, then the action would not be related to the bankruptcy case. 1 Collier on Bankruptcy ¶ S.01[4][c][v], 3-30 (15th Ed. Revised 1997). A suit brought on a cause of action which arose after the commencement of the bankruptcy case and therefore was not property of the estate would benefit the debtor, but not the estate. Id. It is undisputed that any award in this malpractice case would not become property of the estate, and that the Stew-arts have been discharged from bankruptcy. This suit benefits the Stewarts and not the estate, and it is therefore not related to the bankruptcy case.
We are not persuaded by the bankruptcy court’s “explicitly bankruptcy and intimately intertwined with the bankruptcy estate” argument, because that argument is explicitly premised on the bankruptcy court’s conclusion that the claims in the complaint involve property of the estate. Neither are we persuaded by the district court’s “core proceeding” analysis, which is explicitly premised on the conclusion that the Stewarts’ complaint necessarily implicates the administration of the estate. Both of these conclusions are, as we have explained, incorrect.
Because the Stewarts’ malpractice action is not a case under title 11 and does not come within the scope of the “proceedings arising under title 11, or arising in or related to [a] case[] under title 11,” 28 U.S.C. § 1334(b), it is not within the jurisdiction of the bankruptcy court. We therefore hold that the bankruptcy court lacked subject matter jurisdiction to entertain this action.
Conclusion
For the foregoing reasons, we REVERSE the decisions of the bankruptcy court and district court and REMAND *615 this case with instructions that it be remanded to state court.

. By general order of reference filed on July 18, 1984, the United States District Court for the Eastern District of Kentucky referred all *613 of those matters to the bankruptcy judge for that district.