Myron N. TERLECKY, Trustee,
Plaintiff–Appellee,

v.

Mark R. ABELS, et al., Defendants–
Appellants,

Myron N. Terlecky, Trustee,
Plaintiff–Appellee,

v.

George Farnell, et al., Defendants–
Appellants,

Myron N. Terlecky, Trustee,
Plaintiff–Appellee,

v.

James C. Landon, III, et al.,
Defendants–Appellants,

Myron N. Terlecky, Trustee,
Plaintiff–Appellee,

v.

Nicholas R. Sabatino, et al.,
Defendants–Appellants.

No. C2–00–575, C2–00–576,
C2–00–577, C2–00–578.

United States District Court,
S.D. Ohio,
Eastern Division.

March 30, 2001.

lants,[1] who are comprised of four separate groups of individuals, following a judgment rendered by the United States Bankruptcy Court for the Southern District of Ohio on March 30, 2000. The Bankruptcy Court granted the Motion for Summary Judgment filed by Myron N. Terlecky, Chapter 7 Trustee, finding that the payment to the Appellants of various sums as commissions resulting from the sale of stock constituted fraudulent conveyances and that such funds were owed to the Trustee. On the same day, the Bankruptcy Court denied the Cross Motions for Summary Judgment filed by the Appellants which sought a dismissal of the action filed by the Trustee.

The Appellants also appeal the April 18, 2000 Judgment Entries and Orders granting the Trustee's Motion for Summary Judgment as to damages. Thereafter, the appeals filed by all four sets of Appellants herein were consolidated and the issues are ripe for resolution.

Mark Schlachet, Cleveland, OH, for Nicholas R. Sabatino.

Russell Allen Kelm, Law Offices of Russell Kelm, Columbus, OH, for Dublin Securities Inc.

Myron N. Terlecky, Columbus, OH, pro se.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of the appeal filed by Appel-

## I.

On August 18, 1993, Dublin Securities, Inc., Dublin Management, Inc., and Dublin Stock Transfer, Inc. ("Debtors") filed a Petition for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio. Thereafter, on June 10, 1994, the matter was converted to a case under Chapter 7. On June 10, 1996, the Trustee filed an adversary proceeding against the Appellants which forms the basis for this appeal. In his Complaint, the Trustee essentially alleged that the various Appellants were the recipients of fraudulent con-

---

1. The Appellants in this consolidated case include: Richard Bartges, Rudolph Crockett, Jr., Michael Devlin, Larry Dillion, Laurence Dunlap, Donovan Ehrman, Jeffrey Flora, John M. Harris, Elaine Hinrichs, Michelle Leuschen, Paul Leuschen, Daniel Linscott, Jennifer Martin, Terry Mowder, Greg Nelson, Philip D. Payne, James Pennington, A.J. Sexton, Jeffrey A. Smith, Kimberly (Spiers) Faber, Richard J. Stedman, H. Lamar Steen, William Strome, Donald Swearingen, John Switzer, Michael Trammel, Charles Whitefield, Steven Wilson, and Leonard Woods.

veyances. Specifically, the Trustee alleged that the Appellants were commissioned brokers employed by the Debtors and that the Debtors were engaged in a pattern of fraud which operated as a Ponzi scheme. According to the Trustee, various investors would transfer to the Debtors previously purchased stock in exchange for a promise of stock in a new public offering. The Debtors then received the consideration from sale of the old stock. Rather than using such funds to purchase stock in a new offering, the funds were used to pay off older investors and to pay the expenses of the principals of the Debtors. The Appellants received broker commissions in the course of the transactions.

The Trustee asserted two causes of action against the Appellants. The Trustee alleged that the transfers to the Appellants were made for less than a reasonably equivalent value and were made while the Debtors were insolvent. The Trustee sought an order avoiding the alleged fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1) and (2) together with O.R.C. § 1336.04(A)(1) and (2), such state statutes being applicable to this proceeding by virtue of 11 U.S.C. § 544(b).

Thereafter, the Trustee moved for summary judgment. The Appellants responded by filing combined Cross Motions for Summary Judgment and Memoranda Contra. In its decision of March 30, 2000, the Bankruptcy Court concluded that the Debtors had engaged in a fraudulent investment scheme. The Court based this conclusion upon the analysis conducted by Richard E. Clark, an expert witness retained by the Trustee to analyze and evaluate the financial condition of the Debtors. Clark, a Certified Public Accountant and former criminal investigator for the IRS

Criminal Investigative Division, opined that the Debtors were continuously insolvent from at least 1987 to the date the bankruptcy petition was filed.

In response, the Appellants submitted the affidavit of Eileen Johnson,[2] former President of Dublin Stock Transfer, Inc. Johnson claimed that, according to her knowledge, the Debtors were not operating a Ponzi scheme. The Appellants also submitted twelve affidavits of various Broker–Defendants who claimed that they acted in good faith and had no reason to believe that the Debtors were either insolvent or acting in a fraudulent manner. Finally, the Appellants submitted the affidavit of attorney Russell A. Kelm, identifying audited, year end financial statements filed by the Debtors with the Ohio Division of Securities. The Appellants argued that the financial statements indicated that the company was not insolvent as of 1990. Further, Kelm's affidavit also identified certain examination summaries compiled by the Ohio Division of Securities indicating that no violation of Ohio securities laws had occurred.

The Bankruptcy Court credited the affidavit testimony of Clark and found that the Debtors were engaged in a fraudulent scheme and that the companies were insolvent from at least October, 1987 to the date of the filing of the bankruptcy petition. The Bankruptcy Court discounted the conclusory testimony of Eileen Johnson, finding that even if she was previously unaware of the existence of a fraudulent investment scheme, such fact was irrelevant in light of the testimony of Richard D. Clark. Similarly, the claims of the Broker–Appellants that they had no knowledge of the scheme or of the Debtors'

---

**2.** This affiant is erroneously referred to in the Bankruptcy Court's Opinion and Order as Eileen Jones.

insolvency was also found to be legally irrelevant.

Finally, the Bankruptcy Court also discounted the affidavit of Russell Kelm, who did not testify as an expert and did not provide any opinion. His affidavit merely identified various public records, including an earlier finding from the Ohio Division of Securities that no violation of Ohio Securities laws had occurred. The Bankruptcy Court reasoned, however, that the fact that the Division had at one time found no violation of the securities laws was immaterial in light of the fact that the Division itself subsequently obtained an order to shut down the Debtors' operations for violations of Ohio securities law. Finally, even if the balance sheets identified by Kelm indicated that the Debtors were solvent in 1990, the Bankruptcy Court found that this did not create a reasonable inference that the companies were solvent in 1991 and 1992, the precise years when the commissions at issue in this appeal were paid to the Appellants.

The Bankruptcy Court thereupon concluded that the Trustee had established that the Debtors operated a fraudulent investment scheme. The Court also concluded that the Trustee established that the Debtors were insolvent at the time the commissions were paid to the Appellants. According to the Bankruptcy Court, the Debtors did not receive reasonably equivalent value in exchange for the payment of commissions to the Appellants. The Court found that the requirements of 11 U.S.C. § 548(a) and § 544(b), as well as O.R.C. § 1336.04(A) had been satisfied, thereby entitling the Trustee to summary judgment. On April 18, 2000, the Court issued a series of separate orders with respect to each Appellant entering judgment as to a specific amount ordered as judgment in favor of the Trustee. The Appellants seek review of the March 30, 2000 Opinion and Order, together with the individual judgment entries issued on April 18, 2000.

## II.

By the terms of 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from final judgments of a Bankruptcy Court entered in cases referred to the bankruptcy judge under 28 U.S.C. § 157. The scope of review to be conducted by this Court is set forth in Fed. R. Bankr.P. 8013 which provides:

> On appeal the District Court or Bankruptcy Appellate Panel may affirm, modify, or reverse a Bankruptcy Court's judgment order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.

While findings of fact made by a Bankruptcy Court are not to be set aside unless clearly erroneous, particularly with regard to the opportunity of the Bankruptcy Court to judge the credibility of witnesses, such considerations are not applicable to a review of a Bankruptcy Court's order granting summary judgment. A District Court reviewing a decision of a Bankruptcy Court functions as an appellate court and therefore applies the same standards used in appeals from the District Court. *Harbour Lights Marina, Inc. v. Wandstrat*, 153 B.R. 781 (S.D.Ohio 1993). Consequently, a finding by a Bankruptcy Court that a movant is entitled to summary judgment, given the absence of genuine issues of material fact, is a matter of law determined by the Bankruptcy Court and reviewed *de novo* by a District Court. *See In re Constr. Alternatives*, 2 F.3d 670, 674 (6th Cir.1993).

### III.

■ The Appellants raise three issues on appeal. In their first issue, the Appellants claim that the Bankruptcy Court erroneously applied the two year statute of limitations set forth in 11 U.S.C. § 546 and that the claims herein made should be time barred. The Appellants appropriately acknowledge that during the pendency of this appeal, the United States Court of Appeals for the Sixth Circuit decided the case of *Terlecky v. Helmer (In re Dublin Securities)*, 214 F.3d 773 (6th Cir.2000), which sets forth the controlling law on this issue. In *Terlecky*, the Court of Appeals held, contrary to Appellants' position herein, that the statute of limitations for bringing avoidance actions, as it existed prior to 1994 Amendments, begins to run upon the actual appointment of a Chapter 7 Trustee. Since this action was commenced within two years from the date of such appointment, in light of the *Terlecky* decision, the Appellants' position is without merit.

■ The Appellants next contend that the Bankruptcy Court erroneously concluded that the securities offerings were fraudulent investment schemes and that the Debtors were insolvent at the time the commissions were paid to the various Appellants. The Bankruptcy Court found that the Trustee was entitled to summary judgment based upon O.R.C. § 1336.04(A) with respect to both subparts (1) and (2).[3] This statute provides, in part:

> A transfer made … by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made …, if the

debtor made the transfer … in either of the following ways:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer …, and if either of the following applies:
>
> (a) The debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>
> (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

O.R.C. § 1336.04(A). This provision of Ohio law is applicable to these proceedings by virtue of 11 U.S.C. § 544(b).

By the provisions of O.R.C. § 1336.04(A)(1), the Trustee was required to show that a transfer was made by the Debtors with actual intent to hinder, delay, or defraud any creditor of the debtor. To prevail under O.R.C. § 1336.04(A)(2), the Trustee must show that the transfer was made by the Debtors without receiving a reasonably equivalent value and either that the Debtors were engaged in a business for which the remaining assets were unreasonably small in relationship to the business or, alternatively, that the Debtors had reason to believe that they had incurred debts beyond their ability to pay as

---

**3.** In his brief, the Trustee also argues that he has established the rudiments of a fraudulent conveyance under O.R.C. § 1336.05(A) which simply requires the Trustee to demonstrate that a creditor existed and that the Debtors were insolvent at the time of the transfers or became insolvent as a result of the transfers.

This provision of Ohio law was not set forth in the Complaint, was not briefed by the parties in the Court below, and was not addressed in the Bankruptcy Court's Decision and Order. Consequently, this Court does not address whether this section would also provide an alternate basis for relief in this case.

the debts came due. In this case, the Trustee proceeded only on the theory that the remaining assets of the Debtors were unreasonably small in relationship to the business.

The Appellants argue that the Debtors were not engaged in a fraudulent scheme sufficient to show actual intent to hinder, delay, or defraud creditors. The record before the Bankruptcy Court does not support this contention.

The expert testimony of Richard D. Clark provided the primary evidence in support of the Trustee's Motion for Summary Judgment. Clark reviewed the Debtors' financial statements and federal tax returns prepared for the years 1987 through 1991. He also reviewed the initial public offering statements for each company whose stock Dublin Securities, Inc. ("DSI") marketed. He also reviewed individual customer transaction accounts. Finally, he also analyzed the Debtors' bank records together with the general transactional records of each corporation. He also functioned as an investigator and expert witness with regard to criminal charges brought against various principals of the Debtors.

Clark opined that the Debtors were insolvent from at least 1987 to the date of the filing of the bankruptcy petitions. He also testified by way of affidavit that Clarence J. Eyerman and various other individuals used the debtor corporations to perpetrate and maintain a Ponzi scheme from at least 1987 until the date of the bankruptcy petition. The Appellants did not cross examine Clark, nor did they present any competing opinions regarding his conclusions.

The Appellants submitted the affidavit of Eileen Johnson, who served as President of Dublin Stock Transfer, Inc. This entity operated as a transfer agent for the various issues of stock in which DSI sought to make markets. Johnson's affidavit concludes with the following paragraph:

> To my knowledge, at no time was Dublin Securities operating a Ponzi scheme since I believe that each of the stock transactions which they conducted would ultimately result in a stock transfer through my office, whereby an actual stock certificate would be issued for each transaction.

This conclusory paragraph is insufficient, as a matter of law, to create a genuine issue of material fact with regard to the opinions rendered by Clark. Johnson provides no basis for her conclusion. While she indicates her belief that stock transactions would ultimately be completed, she does not address whether, in fact, investors were induced to tender and transfer shares of existing stock in exchange for a promise that they would receive certificates in newly issued stock offerings. Her affidavit simply does not contradict the sworn testimony of Clark that, in fact, this is exactly what happened to a number of investors induced by the Debtors to trade in old stock. In short, her affidavit does not provide any basis upon which a finding or even a reasonable inference could be made that a Ponzi scheme did not exist.

Similarly, the affidavits submitted by twelve of the various Appellants do not provide evidence or even an inference that a Ponzi scheme did not exist. The affidavits essentially aver that each of the Broker–Appellants acted in good faith and had no reason to believe that the Debtors were insolvent or acting in a fraudulent manner. Taking these claims to be true, they are wholly irrelevant to the elements of a claim under O.R.C. § 1336.04(A). The Trustee has not alleged that the Broker–Appellants were actively engaged in a fraudulent scheme. Instead, he has al-

leged that the Debtors engaged in transactions with the intent to hinder, delay or defraud any creditors of the Debtors, and that the Debtors, without receiving a reasonably equivalent value, engaged in business transactions for which the remaining assets of the Debtors were unreasonably small. Neither of these claims require the Trustee to establish that the Broker–Appellants either knew that the transfers were made with intent to defraud creditors or knew that the transactions were without reasonably equivalent value made at a time that the Debtors were insolvent. Consequently, these affidavits cannot create a genuine issue of material fact as to whether the Debtors were engaged in a Ponzi scheme or were insolvent at the time of the transactions.

The affidavit of Attorney Russell A. Kelm, counsel for the Appellants, is also insufficient to create a genuine issue of material fact. Attached to his affidavit are copies of audited year end financial statements for the Debtors from years 1987 through 1991, together with copies of the Division of Securities examination summaries. In addition, attached to his affidavit are copies of examination summaries prepared by the Division of Securities finding "no violations" of Ohio securities laws.

It is undisputed that the Debtors were actually shut down through action initiated by the Ohio Division of Securities. This fact negates any legal significance otherwise attached to findings of no violations. Moreover, the financial documentation attached to Kelm's affidavit is unexplained and devoid of analysis. Further, in Clark's analysis, if the assets listed by DSI as accounts receivables as well as inventory of stocks and warrants were actually reduced to market value and liabilities consequently adjusted, the corporation would then have had liabilities in excess of assets during the entire period of 1987 through October of 1992. The submission of raw, unexplained financial data is not sufficient to create a genuine issue of material fact since the same does not contradict the opinion testimony of Clark that the statements included highly inflated listing of assets.

Finally, the Appellants seek to rely upon the decision of the Ohio Court of Appeals, Tenth Appellate District, Franklin County, reversing criminal convictions of Robert D. Hodge, Dwight I. Hurd, and Beth Eyerman, with regard to conduct related to the Ponzi scheme alleged in the case at bar. The Appellants point to *State of Ohio v. Hurd,* Nos. 96APA03–326, 96APA03–327, 96APA03–328, 1999 WL 281305 *15, 1999 Ohio App. LEXIS, 2047 *40 (Franklin, May 4, 1999) which held that the defendants "did not have fair notice that DSI's practice of selling shares against unexercised warrants precluded application of the 3M exemption" and were therefore not illegal under the Ohio Securities laws. While this statement is correct, it is also irrelevant. Regardless of whether compliance occurred with regard to the Ohio securities laws, transfers in violation of O.R.C. § 1336.04(A) are nonetheless fraudulent. This conclusion does not change simply because a party complied with the Ohio securities laws. Moreover, in *State of Ohio v. Hurd,* the Court itself noted that "investors were never told that money given to DSI to purchase shares was not being used to actually acquire shares in the issuing companies." The Court goes on to note that the arrangement was alleged to be a classic Ponzi scheme. *Id.* at *4, 1999 Ohio App. LEXIS at *10–11. These statements actually support, rather than refute, the existence of a Ponzi scheme.

In summary, the affidavit testimony of expert Richard Clark is unrefuted. The affidavits submitted by the Appellants are

insufficient, as a matter of law, to create a genuine issue of material fact. This Court concludes that the evidence presented by the Trustee in his Motion for Summary Judgment establishes all of the elements of a claim under either O.R.C. § 1336.04(A)(1) or O.R.C. § 1336.04(A)(2). The Debtors engaged in the Ponzi scheme with actual intent to hinder, delay or defraud creditors. Further, the Broker–Appellants were paid commission by the Debtors without the Debtors receiving a reasonably equivalent value at a time the Debtors were insolvent. The arguments of the Appellants to the contrary are not well taken.

Further, the Trustee was also entitled to summary judgment pursuant to 11 U.S.C. § 548(a)(2) which permits him to avoid certain transfers if the Debtors received less than reasonably equivalent value for the transfers and the Debtors were insolvent at the time of the transfers. This section, which overlaps to a substantial degree with O.R.C. § 1336.04(A)(2) requires that actions be brought within one year from the date of the transfers. Consequently, any commission paid prior to August 18, 1992 falls outside of this limitation. As an alternative basis for relief, the Court finds that the Trustee is entitled to summary judgment under § 548(a)(2).

The final argument raised by the Appellants is that the Trustee lacks standing to prosecute an avoidance action based upon the doctrine of *in pari delicto*. The parties do not dispute that the Debtors were knowing and willing participants to the fraudulent transfers. The question the Appellants raise is whether the Trustee should be barred from pursuing an action in which the Debtors were essentially a co-conspirator.

█ Actions brought by bankruptcy trustees fall into two general categories. The first involves claims brought by the trustee as successor to the debtor's interest. The second involves claims brought under one or more of the trustee's avoiding powers. These two categories were described in 3 Collier on Bankruptcy ¶ 323.02[2] (15th Ed. Revised 1997) as follows:

> With respect to the former, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. The trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.

*See also Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 863 (6th Cir. BAP 1997).

█ In this case, the Trustee does not stand in the shoes of the Debtors seeking to recover property allegedly owed to the estate. Instead, the Trustee stands in the place of a creditor who would have standing to pursue a fraudulent conveyance action under Ohio law. *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996); *Belfance v. Bushey (In re Bushey),* 210 B.R. 95, 100 (6th Cir. BAP 1997). Consequently, this Court concludes that the fact that the Debtors participated in the fraudulent scheme does not provide a defense and does not bar the Trustee from pursuing the fraudulent conveyance claims.

## IV.

Based upon the foregoing, the Opinion and Order of the Bankruptcy Court granting the Trustee's Motion for Summary Judgment and denying the Appellant's Cross Motion for Summary Judgment is **AFFIRMED** in all respects. Additionally, the Judgment Entry and Order granting the Trustee's Motion for Summary Judgment as to damages issued with regard to the individual Appellants on April 18, 2000, is also **AFFIRMED**. The Clerk shall re-

454

move this case from the list of pending matters.

IT IS SO ORDERED.