**In re Willy FARAH, Debtor.**

**Willy Farah, Plaintiff,**

v.

**Raymond Keith Richards and Ivo George Caytas, Esq., Defendants.**

**Bankruptcy No. 98–44940(NLW).**
**Adversary No. 99–3010(NLW).**

United States Bankruptcy Court, D. New Jersey.

June 7, 2002.

Paul H. Silverman, Torsten M. Kracht, Alston & Bird, LLP, New York City, Joseph E. Sales, Norris, McLaughlin & Marcus, Somerville, NJ, for Raymond Keith Richards.

Ivo George Caytas, New York City, pro se.

NOVALYN L. WINFIELD,
Bankruptcy Judge.

At the inception of his Chapter 11 case, the debtor, Willy Farah, commenced the instant adversary proceeding against the defendants, Raymond Keith Richards and Ivo George Caytas. Presently pending in that adversary proceeding are competing motions for summary judgment brought by the defendants on Richards' cross-claims against Caytas. At oral argument, this Court requested that the parties submit briefs to address the question of whether the Court has subject matter jurisdiction to dispose of the motions. After

considering the matter, and the briefs filed by the parties, this Court concludes that it does not have subject matter jurisdiction over the cross-claims. Thus, an order shall be entered dismissing the cross-claims for want of subject matter jurisdiction.

## PROCEDURAL HISTORY

On November 19, 1998, debtor Willy Farah ("Farah") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Thereafter, in January 1999, Farah commenced this adversary proceeding against Raymond K. Richards ("Richards") and Ivo G. Caytas, Esq. ("Caytas"). On February 22, 1999, Richards filed an answer, counterclaims, and cross-claims against Caytas in this proceeding. Caytas answered Richards' cross-claims with general denials. Pretrial discovery was conducted by the parties. While this adversary proceeding was pending the case was converted to a Chapter 7 case and a trustee was appointed.

In August 2001, Richards moved to dismiss the complaint with regard to those counts Farah asserted against him. An order was entered dismissing the First, Fifth, and Eighth Counts. The Second, Fourth and Sixth Counts, which addressed the validity of the judgment, were preserved for the benefit of the Chapter 7 Trustee. Similarly in Fall 2001, Caytas sought and obtained dismissal of all counts asserted against him by Farah. However, the cross-claims were specifically preserved by the terms of both of the orders. Thereafter, the present motions for summary judgment were filed by Richards and Caytas. At oral argument, the Court expressed its concern that it lacked subject matter jurisdiction because it could not discern any effect on the bankruptcy estate or the debtor from resolution of the cross-claim Richards was asserting against

Caytas. Because neither party had raised or addressed it, this Court required the parties to brief the issue of its subject matter jurisdiction.

## STATEMENT OF THE FACTS

In his adversary complaint Farah claims to have conducted business as an investor and entrepreneur in international business. In 1996, Farah participated in at least one such investment transaction with Richards as an investor, and Caytas, as an investment broker.

Richards was an investment client of Commercial Capital Establishment ("CCE"). In 1996 Caytas introduced CCE to a Farah business known as Royal Family Enterprises, Inc. ("RFE"). Caytas also entered into a Memorandum of Understanding ("MOU") with RFE pursuant to which Caytas was to receive what he characterizes as a finder's fee—for the contract between Farah and RFE and CCE. The finder's fee apparently would vary under the MOU as it was calculated on "one percent (1%) per trading week of the overall volume of funds by or through: either CCE or certain other enumerated parties in the MOU." (Caytas Statement of Uncontested Material Facts Ex. B). As described by Richards and Caytas, Farah would forward the investment proceeds to Caytas. In turn, Caytas would take his fee and forward the remaining funds onto the investors, including Richards.

In furtherance of the investment arrangement, Richards and Farah opened joint bank accounts at Midlantic Bank in Clifton, New Jersey and Barclays Bank in London. Richards deposited $10,000,000 in each account.

For a few months it appears that Farah and RFE regularly sent monies to Caytas who forwarded the net funds to investors after deducting his fee.

In 1997 Farah ceased making payments to investors. In the summer of 1997 Richards learned that negligible balances existed in both the Midlantic account and the Barclays account. Richards brought suit against Farah and others based on the depletion of these bank accounts and other failed investments. Ultimately, Richards received a default judgment against Farah on December 11, 1997 in the amount of $26.0 million.

Caytas also brought suit against Farah. He obtained a judgment in the amount of $2,838,212.25 on April 28, 1998. Thus, at the time of the bankruptcy filing in November, 1998, both judgments were outstanding. The primary purpose of Farah's adversary proceeding was to avoid the judgment liens held by Richards and Caytas, and to obtain an accounting.

Richards cross-claimed against Caytas asserting that the monies Caytas received from Farah were, in fact, Richards' funds which Farah was not authorized to transfer to Caytas. Richards further alleged that the fees taken by Caytas were not authorized by him, and Richards requested that Caytas be made to account and pay to him all funds received by Caytas. The fees taken by Caytas approximate $1.2 million. Caytas disclaims any knowledge as to the source of the monies he received from Farah. Further, he asserts that he has expended all of the fees he earned and is no longer in possession or control of any funds earned from Farah. Caytas maintains that there is no basis in the facts or the law for Richards' cross-claim against him for conversion.

Both defendants filed proofs of claim. On December 10, 1998 Caytas filed a proof of claim for $2,838,212.25. On March 12, 1999 Richards filed a proof of claim for $26,000,000. As shown on the claims register for this case, the unsecured claims approximate $46,698,723.30. The trustee's efforts have not created a large estate. The only cash generated by the trustee has been from the sale of Farah's residence. The trustee sold the residence for $4,000,000 and netted approximately $3,800,000 after closing costs. Asia Bank and Richards have both asserted their liens with respect to these proceeds. Asia Bank asserts a secured claim in excess of $3,000,000 and Richards claims to have perfected his $26,000,000 judgment lien by levying on the property of the debtor prior to the commencement of the bankruptcy case. In short, there are presently secured claims of approximately $30,000,000 asserted against sale proceeds that do not exceed $3,800,000. Moreover, significant administrative expenses have been incurred during both the Chapter 7 case and the Chapter 11 case which remain unpaid. The trustee continues to attempt to obtain additional recoveries, but the prospects are uncertain. Thus, the likelihood of even a small dividend to unsecured creditors can be described as remote, at best. As a practical matter, the only possible impact on the estate from resolution of this cross-claim is that one unsecured creditors' claim is increased and the other unsecured creditors' claim is decreased.

### DISCUSSION:

 The fact that neither party raised the issue does not bar this Court from examining and determining whether it has subject matter jurisdiction over Richards' cross-claim against Caytas. In order for a court to adjudicate a matter it must have subject matter jurisdiction with regard to the claim. Thus, like any federal court, the bankruptcy court has a duty to insure that its exercise of jurisdiction is appropriate. *See, Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 132, 116 S.Ct. 494, 133 L.Ed.2d 461, Ginsburg concurring (1995) (stating that every federal

court, whether trial or appellate, is obliged to notice want of subject matter jurisdiction on its own motion). This obligation is recognized and incorporated in Federal Rule of Bankruptcy Procedure 7012(h)(3) which states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Plainly then, this Court is not only authorized to determine whether subject matter jurisdiction exists, but is also obligated to do so.

As a preliminary matter, it is also essential to acknowledge that the jurisdiction of bankruptcy courts is grounded in and limited by 28 U.S.C. § 1334. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Under § 1334, after referral from the district court, a bankruptcy court has jurisdiction over: (1) cases arising under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3rd Cir.1991).

Richards argues that, at the very least, his cross-claim against Caytas falls within the "related to" jurisdiction conferred by § 1334 because the outcome of the litigation could affect the amount of claims against the bankruptcy estate, and/or the allocation of estate funds among creditors. Further, Richards contends that the interests of judicial economy are best served by this Court retaining jurisdiction, and that Caytas has consented to bankruptcy court jurisdiction. He further cites to the recent case of *In re Forman Enterprises, Inc.*, 271 B.R. 483 (Bankr.W.D.Pa.2002) for the proposition that "[e]ven if the effect of a proceeding on debtor's liabilities or administration of its estate amounts to a mere trifle, this suffices for purposes of 'related to' jurisdiction." Id. at 486.

In *Forman*, a supplier of the debtor sued the debtor's bank in the District of New Jersey for wrongful dishonor of a letter of credit issued in connection with the debtor's purchase of clothing. The case was transferred to the Western District of Pennsylvania where the debtor's Chapter 11 case was pending. After the Chapter 11 case was converted to a Chapter 7 case, the supplier moved to return the litigation to the District of New Jersey. The supplier argued that because the case had been converted, any obligation by the debtor to indemnify the bank would be discharged. Moreover, the supplier asserted that there would be no substantial impact on the debtor's estate if it recovered a money judgment against the bank because the bank was oversecured. *Id.* at 485. The supplier's argument in *Forman* was unfounded. The estate would have automatically become liable had the bank lost the suit because it was contractually obligated to indemnify the bank for any damages incurred by the bank with regard to the letter of credit. The fact that the bank was oversecured did not eliminate the impact on the debtor's estate. It is unquestionable that every dollar paid to a secured creditor causes a reduction in the estate funds available to pay costs of administration and claims of creditors. Because of this reality, the court in *Forman* held that resolution of the litigation in favor of the supplier would affect the bankruptcy case. *Id.*, at 486. In that regard, *Forman* is factually distinguishable from the matter before this Court.

■ Moreover, we must also concede that there is a point at which the effect on, or relationship to, the bankruptcy is so attenuated as to be nonexistent. The widely accepted test for determining whether a matter is related to a bankruptcy has been articulated in *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) to be

"whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The Third Circuit further explained that an action is related to a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

This test is a sensible one that fulfills the Congressional intent that all matters connected to a bankruptcy case be dealt with by a bankruptcy court. However, jurisdiction is not without boundaries; it does not stretch as far as the eye can see. Indeed, the *Pacor* court noted that the bankruptcy court's jurisdiction is not without limitation, and that "there is a statutory, and eventually constitutional, limitation to the power of a bankruptcy court." *Id.* at 994.

In this Court's view, where the effect on the debtor or estate can be said to be improbable rather than conceivable, the jurisdictional boundary has been exceeded. There must be some possible effect on or relationship to the bankruptcy case itself, or there can be no basis for jurisdiction. In the present matter Richards' cross-claim against Caytas is not grounded in any part of the bankruptcy statute. Nor did any of the pertinent events occur during the case. Moreover, the fact that a recovery by Richards on his cross-claim could reduce his claim against the estate is of no import since Caytas could then submit an amended claim to reflect the recovery. Finally, Richards' assertion that a modified claim by Caytas would be unsuccessful is unsupported even by the case law cited by Richards.

Richards claims that the MOU between Caytas and Farah is unenforceable because, as admitted by Farah in his plea agreement, there were no "trading weeks" on which Caytas' commissions could have been calculated. Farah admitted that the "trading week" was a fiction created by him to perpetuate his fraud. Applying *Hirsch v. Travelers Ins. Co.*, 134 N.J.Super. 466, 470, 341 A.2d 691 (App.Div.1975) and *Terlecky v. Abels*, 260 B.R. 446 (S.D.Ohio 2001) to these facts Richards concludes that Caytas cannot retain commissions for brokering Farah's fraudulent scheme, even if he had no knowledge that the underlying transactions were fraudulent.

While the cases cited by Richards may very well support his claim for a recovery against Caytas, assuming Richards can marshal sufficient facts to support his conclusions, they do not dictate that Caytas has no claim against Farah.

In *Hirsch*, the Appellate Division addressed the question of whether a complaint had sufficiently stated a cause of action so as to survive a motion to dismiss. *Id.* at 469, 341 A.2d 691. In that case the children of divorced parents brought an action to impose a constructive trust on real property of their father's widow. *Id.* Under the property settlement agreement in the divorce proceeding the father was required to maintain insurance policies for the benefit of the children and to place certain securities in trust for their benefit. *Id.* at 468, 341 A.2d 691. In their complaint the children alleged that their father failed to perform as required by the property settlement agreement and instead diverted the funds. *Id.* at 469, 341 A.2d 691. Among other things, they alleged that their father used the diverted funds to purchase a home which he held with his second wife as tenants by the entirety. *Id.* The children sought a constructive trust against their father's widow on the grounds that she had been unjustly enriched by their father's conduct. The wid-

ow's motion to dismiss for failure to state a claim was granted by the lower court. The Appellate Division reversed, finding that after giving the children the benefit of all favorable inferences it could not be said as a matter of law that the widow had the status of a bona fide purchaser. *Id.*, at 471, 341 A.2d 691. As is readily apparent, Hirsch simply addressed whether a constructive trust was sufficiently pleaded by the plaintiffs. The case may be beneficial to Richards in his effort to prevail against Caytas, but it does not address in any fashion the sufficiency of a claim by Caytas against Farah.

Richards' reliance on *Terlecky* is equally misplaced. In that matter, the Chapter 7 trustee sought to avoid as fraudulent transfers, commissions paid by the debtors to brokers who the debtors utilized in furtherance of their Ponzi scheme. The District Court held that it was irrelevant to the cause of action for fraudulent conveyance that the brokers claimed that they acted in good faith and that they had no reason to believe that the debtors were insolvent or acting in a fraudulent manner. *Id.* at 451. The court observed that the trustee's cause of action for fraudulent transfer was premised upon the debtors' conduct in engaging in transactions with the intent to hinder, delay or defraud creditors. *Id.* at 452. The trustee did not have to establish that the brokers had knowledge of the fraudulent conduct by the debtors in order to prevail. *Id.* Once again, it is readily evident that this case does not contain any ruling from which one could conclude that Caytas could not assert a claim against Farah.

■ The assertion by Richards that this Court has subject matter jurisdiction over the cross-claim because Caytas has consented to jurisdiction is also without merit. It is well-recognized that subject matter jurisdiction cannot be conferred by con-

sent. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *People's Bank v. Calhoun*, 102 U.S. 256, 261–62, 26 L.Ed. 101 (1880); *In re Stable Mews Assoc.*, 778 F.2d 121, 125 (2d Cir.1985).

■ Finally, Richards' argument that concern for judicial economy warrants this Court exercising subject matter jurisdiction is utterly unpersuasive. If there is no Constitutional or statutory basis for subject matter jurisdiction, then the mere fact that the bankruptcy court is a convenient forum for one or both parties can hardly matter. Although Richards cites *In re Pruitt*, 910 F.2d 1160 (3rd Cir.1990) for the proposition that judicial economy supports retention of jurisdiction, the issue in *In re Pruitt* was not the scope of bankruptcy subject matter jurisdiction, but whether a district court, sitting in its appellate capacity, may *sua sponte*, without cause, withdraw the reference to bankruptcy court after the bankruptcy court has heard and dismissed a core proceeding with prejudice. Therefore, it is not apposite to the present inquiry.

### CONCLUSION

For the reasons set forth at length in the preceding paragraphs, the Court concludes that it does not have subject matter jurisdiction over the cross-claim by Richards against Caytas.