In the Matter of Gary L. TREMAINE, Debtor.

Elizabeth BROTHERS fka Elizabeth Tremaine, Plaintiff,

v.

Gary L. TREMAINE, Defendant.

Bankruptcy No. 3–94–32316.
Adv. No. 3–95–0067.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Sept. 28, 1995.

---

James S. Armstrong, Dayton, Ohio.

David E. Larson, Kettering, Ohio.

## DECISION ON ORDER ABSTAINING AND DISMISSING ADVERSARY

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of debts pursuant to 11 U.S.C. § 523(a)(5). The issue for decision is whether this court should exercise its discretion and abstain from determining whether certain debts are exceptions to discharge pursuant to 11 U.S.C. § 523(a)(5).

In response to an Order (Doc 10–1) fixing dates for the parties to submit memoranda, the defendant debtor filed a Memorandum Opposing Abstention (Doc 14–1) and the plaintiff filed a Memorandum (Doc 13–1) which stated that she had no objection to the court exercising permissive abstention "if this Court rules that the state court can determine the nature and dischargeability of all three of plaintiff's claims."

### FACTS

The defendant in this adversary proceeding, the Chapter 7 debtor, Gary L. Tremaine (the "Debtor") and the plaintiff, Elizabeth Brothers FKA Tremaine (the "Plaintiff") were married on August 6, 1983. The Plaintiff filed for divorce on November 19, 1991 and a Final Judgment and Decree of Divorce (the "Divorce Decree")[1] was entered on January 8, 1993. The Divorce Decree imposed three (3) obligations (the "Divorce Decree Debts") on the Debtor which are the subject of this proceeding. The Divorce Decree required the Debtor to pay $667 per month, designated as "spousal support", to the Plaintiff for three (3) years and the amount of $1,501 at the rate of $75 per month, representing the attorney fees the Plaintiff incurred in the divorce proceeding. Additionally, the Divorce Decree awarded the marital residence to the Debtor, but ordered that the Plaintiff be reimbursed for the interest she held in the residence, $4,893 payable at $150 per month with ten percent (10%) interest on the balance.

On June 9, 1993, the Debtor filed a motion in the Common Pleas Court of Montgomery County, Division of Domestic Relations (the "Domestic Relations Court") for modification of spousal support based on a change in circumstances. In response, the Plaintiff filed a motion for contempt in the same court on October 7, 1993. Three (3) hearings were held in the Domestic Relations Court at the conclusion of which a Report and Recommendations dated February 7, 1994 was issued by a Referee of the Domestic Relations Court. The Report and Recommendation overruled the Debtor's motion to reduce spousal sup-

---

[1] All references in this decision are to documents of record entered by this court, filed by the parties, or attached as exhibits to documents filed by the parties.

port and found the Debtor "in flagrant contempt of prior court orders regarding the payment of spousal support". The Referee's Report and Recommendation was adopted by the Domestic Relations Court Judge and the Debtor filed an objection. The Domestic Relations Court Judge entered a final order denying the Debtor's motion and finding the Debtor in contempt on April 25, 1994. The Debtor filed a Notice of Appeal in the Court of Appeals, Montgomery County, Ohio, Second Appellate District ("the Court of Appeals") on May 13, 1994.

On July 11, 1994, the Debtor sought relief under Chapter 13 of the United States Bankruptcy Code. As a result, the appeal pending in the Second District Court of Appeals as Case No. CA–14579 was stayed. 11 U.S.C. § 362(a). The Debtor failed to propose a confirmable Chapter 13 plan and, on December 22, 1994, filed a notice of conversion to Chapter 7. On April 14, 1995, the Plaintiff filed an adversary complaint (Doc 1–1) objecting to the dischargeability of the three (3) Divorce Decree Debts pursuant to 11 U.S.C. § 523(a)(5). The Debtor was granted a Chapter 7 discharge on April 25, 1995.

Although the discharge terminated the automatic stay,[2] allowing the proceeding in the Court of Appeals to go forward, the Court of Appeals entered a "Decision and Entry" dated July 19, 1995 in which it ordered that the briefing schedule in the appellate matter be held in abeyance pending a ruling by this court on the abstention issue.

As discussed herein, this court determines that abstention is appropriate in the factual circumstances of this adversary.

**2.** 11 U.S.C. § 362(c)
 Except as provided in subsections (d), (e), and (f) of this section—
 (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
 (A) the time the case is closed;
 (B) the time the case is dismissed; or
 (C) if the case is a case under chapter 7 of this title concerning an individual of a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

**3.** The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 108 Stat. 4106 (1994) was signed

## DISCUSSION

The adversary filed by the Plaintiff (Doc 1–1) requests a determination of the dischargeability of the Divorce Decree Debts pursuant to the exception to discharge set forth in 11 U.S.C. § 523(a)(5). Section 523(a)(5) excepts from discharge any debt owed

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

*See Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517 (6th Cir.1993).

 The discharge entered by this court pursuant to 11 U.S.C. § 727(b) on April 25, 1995 does not shield the Debtor from the Plaintiff's adversary action. Section 727(b) provides the Debtor with a discharge of all debts "[e]xcept as provided in section 523 of this title". Unlike dischargeability issues based on §§ 523(a)(2), (4), (6) and (15)[3], where debts are automatically discharged unless the creditor timely files a request in

into law on October 22, 1994. The Act established 523(a)(15) as a new subsection and became effective immediately upon enactment. It provided for prospective application of the law, and therefore applies only to cases commenced after the date of enactment. See H.R.Rep. No. 5116, 103 Cong., 2d Sess. 702 at 114–115 (1994) (indicating that "the amendments made by [the] Act shall not apply with respect to cases commenced under Title 11 of the United States Code before the date of the enactment of [the] Act.").

bankruptcy court for determination of non-dischargeability, a debtor's obligation pursuant to § 523(a)(5) requires a judicial determination. Thus, following the issuance of a discharge, the question of dischargeability pursuant to § 523(a)(5) is preserved until judicial resolution. *In re Balvich*, 135 B.R. 327 (Bankr.N.D.Ind.1991).

■ State and federal courts have concurrent jurisdiction to determine whether a debt is excepted from discharge under § 523(a)(5). *In re Richards*, 131 B.R. 76 (Bankr.S.D.Ohio 1991); *Barnett v. Barnett*, 9 Ohio St.3d 47, 458 N.E.2d 834 (1984); *Matter of Brock*, 58 B.R. 797 (Bankr.S.D.Ohio 1986). Although state law is a source of guidance, federal law is controlling in making the determination of dischargeability. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983); *In re Leslie*, 181 B.R. 317 (Bankr.N.D.Ohio 1995).

■ Permissive abstention authorized by § 1334(c)(1)[4] permits a bankruptcy court to exercise its discretion to abstain in favor of another court in certain circumstances. Specifically, section 1334(c)(1) provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ The decision whether to abstain is within the sound discretion of the bankruptcy judge. *Carver v. Carver*, 954 F.2d 1573 (11th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992). Permissive abstention is not limited to non-core matters, but is applicable in core proceedings, including a complaint to determine dischargeability of a debt, *In re Mitchell*, 132 B.R. 585 (Bankr.S.D.Ind.1991), and can be raised by a bankruptcy court on its own motion so long as the parties are given an

opportunity to be heard. *In re Costa*, 172 B.R. 954 (Bankr.E.D.Cal.1994).

■ This court is mindful of the fact that, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule". *Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (In re Hughes–Bechtol, Inc.*, 107 B.R. 552 (Bankr.S.D.Ohio 1989). In *Hughes–Bechtol*, this court quoted the language of the U.S. Supreme Court in *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), when it recognized that:

> The doctrine of abstention under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State Court would clearly serve an important countervailing interest. (citation omitted).

*See also Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). *Accord In re Walter*, 153 B.R. 38 (Bankr.N.D.Ohio 1993).

■ Further, in proceedings to determine dischargeability pursuant to § 523(a)(5) where the bankruptcy court and a state court have concurrent jurisdiction to determine the issue, the general rule is that the court in which the issue is first presented (or capable of presentation)[5] through proper filings and proceedings will continue the proceedings to conclusion. *In re Maynard*, 30 B.R. 279 (Bankr.S.D.Ohio 1983).

■ The decision to abstain or not is aided by an analysis of all relevant factors, including a non-exclusive list of thirteen (13) decisional criteria set forth by this court in *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roof-*

---

**4.** 28 U.S.C. § 1334 refers to the United States district courts but, "the section refers to the bankruptcy court when the district court has referred a case or proceeding to the bankruptcy court." *See In re Cash Currency Exchange, Inc.*, 37 B.R. 617 (Bankr.D.C.Ill.1994) aff'd 762 F.2d

542, cert. denied, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985).

**5.** *In re Reed*, 161 B.R. 943 (Bankr.N.D.Ohio 1993).

*ing & Sheet Metal, Inc.)*, 130 B.R. 768 (Bankr.S.D.Ohio 1991). Specifically, the following factors were identified: 1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and, 13) any unusual or other significant factors. *Nationwide*, 130 B.R. at 780 (citations omitted).

■ This non-exclusive list does not require a mechanical application of each factor, but provides a starting point for a permissive abstention analysis. In this proceeding, the majority of the factors are of negligible assistance in determining the abstention issue. An examination of three (3) factors, however, militates in favor of abstention: the presence of a related proceeding pending in the state court system; the appearance of forum shopping by the Debtor; and the lack of finality caused by the Debtor's pursuit of state court appellate proceedings that diminishes, if not eliminates, any meaningful determination of dischargeability by this court.

The "unusual and significant" factor which weighs most heavily in favor of abstention is the presence of an appellate proceeding which has reached advanced stages in the state court system, but has not finally established the amount of the Divorce Decree Debts. After the Domestic Relations Court declined to modify the Divorce Decree Debts and found the Debtor in contempt, the Debt-

or exercised his right to appeal the judgment to the Court of Appeals. Before the Court of Appeals had an opportunity to determine the issues raised in the Debtor's appeal, *including sustaining, reversing, and/or remanding the Domestic Relations Court's decision concerning the appropriate amount of spousal support*, the Debtor's bankruptcy petition halted the appellate process. The fact that the obligations in question, the Divorce Decree Debts, have not been finally determined by state court proceedings significantly diminishes, if not completely forecloses, this court's opportunity to enter an appropriate determination regarding dischargeability pursuant to 523(a)(5).

■ As previously stated, the dischargeability of the Divorce Decree Debts must be determined pursuant to federal law. The analytical framework for determining when obligations are actually in the nature of alimony, maintenance or support was defined by the Sixth Circuit in *In re Calhoun, supra*, and restated in *In re Fitzgerald, supra*. The court must examine a state court judgment to determine "whether something *not* denominated as support in the divorce decree was really support" and "whether something denominated as alimony is really alimony and not, for example, a property settlement in disguise". *Fitzgerald*, 9 F.3d at 521. Performance of this analysis requires that the amount of the debts in question be established. If the amount of the Divorce Decree Debts is finally determined to be greater or less than the amounts presently before this court, the determination of dischargeability could be completely different. The absence of finality in the amount of the obligations erects an almost impenetrable barrier to any court's application of the § 525(a)(5) dischargeability analysis mandated in this circuit.

While the lack of finality as to the amounts of the Divorce Decree Debts and the presence of a pending state court proceeding would be sufficient to determine that abstention is appropriate in this proceeding, an additional factor weighs in favor of abstention. The procedural history of the Debtor's filings, including the filing of the state court appeal, followed by the filing of the Debtor's

initial chapter 13 and subsequent chapter 7 case, supports the conclusion that forum shopping on the part of the Debtor is involved. Although each filing of the Debtor may have been legally permissible, the totality of the filings, particularly when viewed in the context of their timing, establishes that the Debtor remains engaged in forum shopping. If the Debtor did not wish to comply with the Domestic Relations Court's order he could have sought a stay of that order pending resolution of his appellate proceedings; or, if relief was denied, a stay from the Court of Appeals. The Debtor did neither. Instead, only three (3) days after filing his bankruptcy, the Debtor sought relief from the automatic stay obtained as a result of his bankruptcy filing for the *limited* purpose of continuing his proceeding in the Court of Appeals. Thus, through the use of the Bankruptcy Code, the Debtor would be free to pursue his state appellate rights without complying with the Domestic Relation Court's orders and without complying with applicable state court's procedures to obtain a stay of those orders.

Further, the elimination of additional costs to the parties, unnecessary proceedings in two (2) court systems, and concern for judicial economy also support the decision to abstain. The state court system, *alone,* can determine what, if any, modifications should be made to the Divorce Decree Debts, and establish their final amount. Likewise, *only* the state court can determine whether, as a result of the Debtor's discharge of certain debts in this chapter 7 case or other factors, there has been a change in circumstances warranting further modification of the Divorce Decree Debts and address any other appropriate state law issues. Thereafter, the Domestic Relations Court can decide which of the finally determined Divorce Decree Debts are dischargeable pursuant to applicable federal law. The state court system, with the jurisdiction and capability to resolve all of these issues, is the more appropriate forum.

The court emphasizes that this decision to abstain in favor of the Domestic Relations Court in a proceeding in which the issue of dischargeability pursuant to § 523(a)(5) was first presented through proper filings and proceedings to the bankruptcy court is the exception and not the rule. This exception is justified in this adversary as a result of several factors, including the fact that the amounts of the Divorce Decree Debts are not final as a result of the existence of pending state court proceedings. It is also significant that there is a single forum, the Domestic Relations Court, which, after a final determination of the amounts of the Divorce Decree Debts, can enter any appropriate relief pursuant to state law. Thereafter, the Domestic Relations Court can determine the dischargeability of the Divorce Decree Debts pursuant to federal law, following which either party can seek appellate review within the state court system. These factors and the Debtor's forum shopping combine to persuade this court that abstention from deciding any dischargeability issues pursuant to § 523(a)(5) is appropriate in these circumstances. Further, since the only issue presented in this adversary is the dischargeability determination, this adversary will be DISMISSED.

An order in accordance with this decision is simultaneously entered.