**In re DAYTON TITLE AGENCY, INC., Debtor.**

**Dayton Title Agency, Inc., Plaintiff,**

**v.**

**Donald C. Wright, et al., Defendants.**

**Bankruptcy No. 99–35768.**
**Adversary No. 03–3507.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Feb. 2, 2004.

[redacted]

Anne M. Frayne, Sue Seeberger, Myers & Frayne Co., LPA, Dayton, OH, for Dayton Title Agency, Inc.

Jonathan Hollingsworth, Washington & Hollingsworth Co., LPA, Neil F. Freund, Freund, Freeze & Arnold, Dayton, OH, Co–Counsel for Donald C. Wright and Don Wright Realty, LLC.

## DECISION AND ORDER DISMISSING ADVERSARY PROCEEDING

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the October 23, 2003 motion of Defendants Donald C. Wright, et al., to dismiss this Adversary Proceeding for lack of subject matter jurisdiction or, in the alternative, under the mandatory abstention doctrine set forth in 28 U.S.C. § 1334(c)(2) [Adv. Doc. # 9]. Plaintiff Dayton Title filed a Response to the Motion to Dismiss on November 17, 2003 [Adv. Doc. # 10] to which Defendants replied on December 1, 2003 [Adv. Doc. # 11]. The court heard oral arguments January 13, 2004. Based on the Motion, the Response and Reply, the arguments of counsel, and a review of the appropriate statutory and case law, the court hereby grants the Motion and, in the interest of judicial economy and timeliness, dismisses this action under the doctrine of voluntary abstention set forth in 28 U.S.C. § 1334(c)(1).

This bankruptcy and attendant adversary proceeding are two of many matters before this court that arose as a direct result of the criminal business practices of

Krishan Chari and, in particular, the singular event that precipitated the end of Chari's illegal schemes. *See The White Family Companies, Inc., et al. v. Dayton Title Agency, Inc., et al. (In re Dayton Title Agency, Inc., et al.),* 284 B.R. 238, 240–44 (S.D.Ohio 2002) (quoting this court's earlier opinion and providing an in-depth overview of the facts leading up to this bankruptcy).[1] Krishan Chari operated in the real estate business in the late 1990s. Part of Chari's business involved brokering the sale of real property throughout southwest Ohio. Unfortunately, many of these real estate sales were fraudulent in that the owner of the property was completely unaware of the sale and the buyer received little, if anything, for the money paid at the sale closing. In order to finance his operations, Chari garnered short-term, high-yield bridge loans from various individuals, covered his immediate funding needs, and then paid back the loans with fraudulently attained funds. He also often counted on the float involved in the banking transaction and the good-will, or gullibility, of the other parties to the transaction to cover his illegal activities. Chari was extremely successful until late October, 1999.

On October 19, 1999, Chari requested that the Debtor deposit a five million dollar check in its escrow account and then immediately disburse the proceeds of the check to two individuals to whom Chari owed money based on bridge loans. The five million dollar check was a complete fake. Although signed, it was drafted in the name of a non-existent entity on a non-existent account. The Debtor's employees accepted the check and immediately issued two checks from the Debtor's escrow account according to Chari's instructions. The two checks totaled $4,885,000.00. After the two new checks were quickly cashed and honored by the Debtor's bank and the fake check proved to be worthless, the result was a complete depletion of the Debtor's escrow account. The escrow account's negative balance caused a real money loss of more than $700,000 to be incurred by all of those who had funds in the escrow account. Dayton Title Agency, Inc. then filed bankruptcy.

In this adversary proceeding, the Debtor complains that the Defendants, Don Wright Realty, LLC and its principal, Donald C. Wright, are liable for the losses incurred by the Debtor based on several connections between the Defendants and Chari. First, Chari was affiliated with Don Wright Realty, LLC. Second, the fake check was from a imaginary company that appears connected to the Defendants and, finally, the fake check was signed by an employee of the Defendants. The Debtor has sued Defendants alleging that the Defendants and their employees perpetrated fraud against the Debtor and claiming over $35 million in both actual and punitive damages. Notably, all of the claims against the Defendants are based in state law.

The court must have jurisdiction over the Debtor's allegations before they can be addressed. The Defendants filed the pres-

---

1. In addition, Krishan Chari's exploits have led to several other published opinions which provide further background information on the facts surrounding this bankruptcy. *See Dayton Title Agency, Inc. v. The White Family Companies, Inc., et al. (In re Dayton Title Agency, Inc., et al.),* 292 B.R. 857 (Bankr. S.D.Ohio 2003); *John Paul Rieser v. Karen Milford and Kevin Milford (In re Krishan Chari, and the Chari Group, Ltd., LLC),* 276 B.R. 206 (Bankr.S.D.Ohio 2002); *Dayton Title Agency, Inc. v. The White Family Companies, Inc., et al. (In re Dayton Title Agency, Inc., et al.),* 262 B.R. 719 (Bankr.S.D.Ohio 2001); *Dayton Title Agency, Inc., et al. v. Philadelphia Indemnity Insurance Company (In re Dayton Title Agency, Inc., et al.),* 264 B.R. 880 (Bankr.S.D.Ohio 2000).

ent Motion to Dismiss arguing that the state law claims of fraud are not within the jurisdiction of the bankruptcy court and, even if jurisdiction exists, the court must abstain from hearing the matter under the mandatory abstention doctrine set forth in 28 U.S.C. § 1334(c)(2). The Debtor argues that this matter not only falls within the jurisdiction of the bankruptcy court, but that it is a core proceeding in accordance with 28 U.S.C. § 157(b). The issue set forth by the parties is, therefore, if and to what extent this court has jurisdiction over the Debtor's claims against the Defendants. Once that is determined, and only if the court finds that subject matter jurisdiction exists, then the court must decide whether it is required to abstain from hearing the matter under 28 U.S.C. § 1334(c)(2).

## I. The Bankruptcy Court's Jurisdiction

The United States Court of Appeals for the Sixth Circuit has set forth a two step process for determining whether a bankruptcy court has jurisdiction over a nondebtor party. *See In re Wolverine Radio Company*, 930 F.2d 1132, 1140 (6th Cir. 1991). First the court must determine if jurisdiction exists under 28 U.S.C. § 1334(b). *See id.* ("the bankruptcy court's jurisdiction over a case involving nondebtors [is] to be determined solely by 28 U.S.C. § 1334(b)"). Second, the court should verify the extent of that jurisdiction. *See id.* at 1143 ("Having decided that subject matter jurisdiction exists over this proceeding, we must now determine the extent of that jurisdiction.").

### A. Jurisdiction Under 28 U.S.C. § 1334

 Section 1334(b) of title 28 of the United States Code provides for the United States District Courts' jurisdiction over

bankruptcy cases and states, in relevant part, as follows:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334. The District Court for the Southern District of Ohio has issued a standing General Order of Reference granting this court jurisdiction in all cases to which the district court has jurisdiction. Thus, this court has jurisdiction over any matter that is, at a minimum, "related to" the bankruptcy. *See Wolverine*, 930 F.2d at 1141. "Related to" jurisdiction under section 1334 is extremely "expansive." *See id.* The most accepted test for a bankruptcy court's "related to" jurisdiction was set forth by the United States Court of Appeals for the Third Circuit in *In re Pacor* which stated that "whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Wolverine*, 930 F.2d at 1142 (quoting *In re Pacor*, 743 F.2d 984, 994 (3d Cir. 1984)).

In the present case, the Debtor has sued the Defendants for thirty-five million dollars. The Defendants argue that the nexus between the Debtor's claims and the bankruptcy is too tenuous for the court to determine that it has jurisdiction over the claims. The Debtor's claims are based completely in state law and the Defendants have not filed a claim in this bankruptcy. While the court recognizes that claims are

often made and suits brought in bankruptcy court in which the relationship between the suit and the bankruptcy is so tenuous that jurisdiction cannot be found, the court finds that this matter is not one of those cases. For example, a positive result in an amount that is even a fraction of the damages claimed in this matter would have a great effect on the administration of the estate. Such a result might ultimately allow the Debtor to pay off all of its creditors in full. Moreover, the Debtor has consistently listed its possible claims, including those against the Defendants, in its bankruptcy documents indicating clearly that these claims are associated with and an integral part of this bankruptcy case.

Under the expansive test for "related to" jurisdiction and given the lasting effect that the outcome of this proceeding could conceivably have on the Debtor's estate, the court finds that it has "related to" jurisdiction over this matter under section 1334.

### B. The Extent of Jurisdiction Under 28 U.S.C. § 157

 Section 157 provides a framework for two types of bankruptcy court jurisdiction: core and non-core. *See* 28 U.S.C. § 157(b) & (c). Section 157(b)(2) provides a non-exhaustive list of core proceedings. *See Dayton Title Agency, Inc., et al. v. Philadelphia Indemnity Insurance Company (In re Dayton Title Agency, Inc., et al.)*, 264 B.R. 880, 883 (Bankr. S.D.Ohio 2000); *Robiner v. Home Owners Rescue Service (In re Webb)*, 227 B.R. 494, 497 (Bankr.S.D.Ohio 1998). Courts have found matters to be core which are not provided for in section 157(b)(2), but generally if a proceeding "does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, then it is not a core

proceeding." *Wolverine*, 930 F.2d at 1144 (quoting *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987)). The outcome of the determination affects the extent of decision-making ability the bankruptcy court has over the case. If a matter is found to be a core proceeding, the bankruptcy court may determine with finality all issues before the court. *See* 28 U.S.C. § 157(b)(1). If, however, the proceeding is not core, but "otherwise related" to the bankruptcy, then it will be considered a non-core proceeding. Non-core proceedings are addressed in section 157(c) which provides that when a case is not core, the bankruptcy judge may hear the proceeding, but may not finally determine the matter. *See* 28 U.S.C. § 157(c)(1).

The Debtor argues that this matter is a core proceeding as defined in subsection 157(b)(2)(A) applying to matters that concern the administration of the estate. According to the Debtor's argument, the legal claims incorporated in the Debtor's lawsuit against Defendants are property of the estate. The administration of the estate includes the Debtor's marshaling of this property of the estate through the institution and pursuit of this lawsuit. The court disagrees. The Debtor provides no legal support for its arguments. Moreover, subsection 157(b)(2)(A) is worded so broadly that almost any damages action that might increase the assets of the estate could conceivably fall within its purview. *See Philadelphia Indemnity Insurance Company*, 264 B.R. at 883; *Commercial Heat Treating of Dayton, Inc. v. Atlas Industries, Inc. (In re Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 887 (Bankr.S.D.Ohio) (stating that "the elastic language in these provisions is too unstable a foundation" on which to base a determination of core or non-core). These claims were not created in federal bankruptcy law. Instead they are based exclu-

sively in Ohio state law and could exist outside of this bankruptcy.

While this matter is "related to" the bankruptcy with a sufficient nexus for the court to find it has jurisdiction under 28 U.S.C. § 1334, it is a non-core proceeding under 28 U.S.C. § 157. The court can only provide proposed findings of fact and conclusions of law to the district court for *de novo* review.

## II. Abstention

■ The determination that this complaint is a non-core, related to matter does not conclude the issues before the court. The Defendant also moved the court to abstain from this matter arguing that the present circumstances fall under the doctrine of mandatory abstention set forth in 28 U.S.C. § 1334(c)(2). Section 1334(c) provides for both voluntary and mandatory abstention and sets forth as follows:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Applying the language of section 1334(c)(2) to this matter leads the court to find that mandatory abstention is not required. Although this matter is a "related to" matter that is based upon state law claims and it could not have been commenced in a court of the United States absent jurisdiction under section 1334, a state law action has not previously been commenced in a state forum. If a lawsuit had been commenced in state court prior to the filing of the present suit, then the court may have been required to abstain. That is not the case, however, and the mandatory abstention doctrine does not apply.

■ Section 1334(c)(1), however, allows a court to voluntarily abstain in the "interest of justice" or "the interest of comity with State courts or respect for State law." Voluntary, or permissive, abstention is available in both core and non-core proceedings. *See In re Underwood,* 299 B.R. 471, 476 (Bankr.S.D.Ohio 2003); *In re Tremaine,* 188 B.R. 380, 384 (Bankr. S.D.Ohio 1995). Although abstention from the exercise of federal jurisdiction is the exception rather than the rule, *see Underwood,* 299 B.R. at 476, the decision to do so is "in the sound discretion of the bankruptcy judge and can be raised sua sponte as long as the parties have an opportunity to be heard." *Id.* When deciding whether to voluntarily abstain, courts have used the following non-exclusive factors:

(1) the effect or lack of effect on the efficient administration of the estate if the court abstains;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of this court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties; and

(13) any unusual or other significant factors.

*Id.; see also Tremaine,* 188 B.R. at 384–85; *Nationwide Roofing & Sheet Metal v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.),* 130 B.R. 768, 780 (Bankr.S.D.Ohio 1991). As noted, these factors are not exclusive and the decision to voluntarily abstain is ultimately one that should be balanced using a court's equitable discretion. *See Underwood,* 299 B.R. at 476.

▮ Upon examination of the above factors, the court finds this case to be ripe for voluntary abstention. This case is not simply predominated by state law issues, but exclusively involves state law issues. Moreover, there is no basis for this court's jurisdiction outside of section 1334. The negative effect of abstention on the administration of the estate is minimal since this matter is procedurally still in its infancy. No discovery has taken place nor has an answer been filed.

Because the matter is a non-core, related to matter, abstention will most likely speed up the resolution of this matter. If the court does not abstain, the time in which the matter will be resolved could double since the bankruptcy court will hear the matter and then send recommendations to the district court for *de novo* review. Thus, the parties may be faced with trying the case twice, or, at a minimum, conducting the case in two different courts.

Additionally, the issues of fraud and vicarious liability, although not extremely complex, are those most properly heard in a state court and decided by a jury. The Debtor indicates that it would submit to a jury and this court has the authority to conduct a jury trial, but that process is unusual and would undoubtedly slow the matter down even further.

The Debtor argues that this matter is properly before this court because of the court's familiarity with the relevant facts surrounding the Debtor's transactions. That is not necessarily the case. Although this court is familiar with the complicated transactions that led to the Debtor's bankruptcy, it is not patently familiar with the specific facts that relate to the alleged fraud perpetrated by and the vicarious liability of the Defendants. Thus, after careful review of the factors to be considered relating to voluntary abstention and accounting for the various arguments before the court, the court finds that it both timely and equitable to voluntarily abstain from hearing this matter.

▮ Although this case is clearly ripe for voluntary abstention, the court will not abstain if the Debtor will have no other forum in which to bring its claims. *See Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 131 B.R. 799, 803 (S.D.Ohio 1990) (overruling a similar case in which the bankruptcy court suggested voluntarily abstention in an action that was

barred by the applicable state statute of limitations). The claims alleged by the Debtor in this case consist of fraudulent and negligent representations carried out by Chari and the employees of the Defendants and appear to fall under the Ohio statute of limitations for common law fraud tort actions. *See* O.R.C. § 2305.09(C) & (D); *Baker v. Pfeifer,* 940 F.Supp. 1168, 1182 n. 19 (S.D.Ohio 1996). No evidence is before the court on the exact date in which the statute of limitations tolled on these actions and the court makes no ruling on that issue. The court notes, however, that if this adversary proceeding were filed within the appropriate time period according to O.R.C. § 2305.09, then Ohio's "savings statute" is applicable. *See Wasyk v. Trent,* 174 Ohio St. 525, 191 N.E.2d 58, 62 (1963); O.R.C. § 2305.19. Under section 2305.19, the Debtor has one year from the date of entry of this dismissal to re-file this action in the appropriate Ohio state court. *See* O.R.C. § 2305.09.

Because the matters alleged in the Debtor's complaint are exclusively state law claims that are more appropriately and expediently heard in state court and because the Debtor has one year from the date of this dismissal to file an action in the Ohio state courts, the court will voluntarily abstain from hearing this matter under 28 U.S.C. § 1334(c). The complaint is dismissed without prejudice.

### Conclusion

This matter is a non-core, related to proceeding under 28 U.S.C. §§ 1334 and 157 that does not fall under the requirements of mandatory abstention set forth in 28 U.S.C. § 1334(c)(2). In the interests of judicial economy and timeliness and because the Debtor has ample opportunity to bring another action in a more appropriate forum, the court will voluntarily abstain under 28 U.S.C. § 1334(c)(1). The Defen-

dants motion to dismiss is granted on those grounds and this matter is dismissed without prejudice.

**It is so ordered.**